# LOCKYER, ATTORNEY GENERAL OF CALIFORNIA *v.* ANDRADE

No. 01–1127.   Argued November 5, 2002—Decided March 5, 2003

64

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, and THOMAS, JJ., joined. SOUTER, J., filed a dissenting opinion, in which STEVENS, GINSBURG, and BREYER, JJ., joined, *post*, p. 77.

*Douglas P. Danzig,* Deputy Attorney General of California, argued the cause for petitioner. With him on the briefs were *Bill Lockyer,* Attorney General, *pro se, Robert R. Anderson,* Chief Assistant Attorney General, *Gary W. Schons,* Senior Assistant Attorney General, and *Carl H. Horst,* Supervising Deputy Attorney General.

*Erwin Chemerinsky* argued the cause for respondent. With him on the brief were *Paul Hoffman, Jordan C. Budd, Steven R. Shapiro, Mark D. Rosenbaum, Daniel P. Tokaji,* and *Alan L. Schlosser.**

---

*\*Kent S. Scheidegger* and *Charles L. Hobson* filed a brief for the Criminal Justice Legal Foundation et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the California Public Defenders Association by *Kenneth I. Clayman;* for Families to Amend California's Three Strikes et al. by *Gerald F. Uelmen;* for the National Association of Criminal Defense Lawyers by *Sheryl Gordon McCloud;* and for Donald Ray Hill by *Susan S. Azad* and *Kathryn M. Davis.*

Briefs of *amici curiae* were filed for the California District Attorneys Association by *Dennis L. Stout* and *Grover D. Merritt;* and for Michael P. Judge by *Albert J. Menaster* and *Alex Ricciardulli.*

JUSTICE O'CONNOR delivered the opinion of the Court.

This case raises the issue whether the United States Court of Appeals for the Ninth Circuit erred in ruling that the California Court of Appeal's decision affirming Leandro Andrade's two consecutive terms of 25 years to life in prison for a "third strike" conviction is contrary to, or an unreasonable application of, clearly established federal law as determined by this Court within the meaning of 28 U. S. C. § 2254(d)(1).

## I

### A

On November 4, 1995, Leandro Andrade stole five videotapes worth $84.70 from a Kmart store in Ontario, California. Security personnel detained Andrade as he was leaving the store. On November 18, 1995, Andrade entered a different Kmart store in Montclair, California, and placed four videotapes worth $68.84 in the rear waistband of his pants. Again, security guards apprehended Andrade as he was exiting the premises. Police subsequently arrested Andrade for these crimes.

These two incidents were not Andrade's first or only encounters with law enforcement. According to the state probation officer's presentence report, Andrade has been in and out of state and federal prison since 1982. In January 1982, he was convicted of a misdemeanor theft offense and was sentenced to 6 days in jail with 12 months' probation. Andrade was arrested again in November 1982 for multiple counts of first-degree residential burglary. He pleaded guilty to at least three of those counts, and in April of the following year he was sentenced to 120 months in prison. In 1988, Andrade was convicted in federal court of "[t]ransportation of [m]arijuana," App. 24, and was sentenced to eight years in federal prison. In 1990, he was convicted in state court for a misdemeanor petty theft offense and was ordered to serve 180 days in jail. In September 1990, Andrade was convicted again in federal court for the same fel-

ony of "[t]ransportation of [m]arijuana," *ibid.*, and was sentenced to 2,191 days in federal prison. And in 1991, Andrade was arrested for a state parole violation—escape from federal prison. He was paroled from the state penitentiary system in 1993.

A state probation officer interviewed Andrade after his arrest in this case. The presentence report notes:

> "The defendant admitted committing the offense. The defendant further stated he went into the K-Mart Store to steal videos. He took four of them to sell so he could buy heroin. He has been a heroin addict since 1977. He says when he gets out of jail or prison he always does something stupid. He admits his addiction controls his life and he steals for his habit." *Id.*, at 25.

Because of his 1990 misdemeanor conviction, the State charged Andrade in this case with two counts of petty theft with a prior conviction, in violation of Cal. Penal Code Ann. § 666 (West Supp. 2002). Under California law, petty theft with a prior conviction is a so-called "wobbler" offense because it is punishable either as a misdemeanor or as a felony. *Ibid.*; cf. *Ewing* v. *California, ante,* at 16–17 (plurality opinion). The decision to prosecute petty theft with a prior conviction as a misdemeanor or as a felony is in the discretion of the prosecutor. See *ante,* at 17. The trial court also has discretion to reduce the charge to a misdemeanor at the time of sentencing. See *People* v. *Superior Court of Los Angeles Cty. ex rel. Alvarez,* 14 Cal. 4th 968, 979, 928 P. 2d 1171, 1177–1178 (1997); see also *Ewing* v. *California, ante,* at 17.

Under California's three strikes law, any felony can constitute the third strike, and thus can subject a defendant to a term of 25 years to life in prison. See Cal. Penal Code Ann. § 667(e)(2)(A) (West 1999); see also *Ewing* v. *California, ante,* at 16. In this case, the prosecutor decided to charge the two counts of theft as felonies rather than misdemeanors. The trial court denied Andrade's motion to reduce the of-

fenses to misdemeanors, both before the jury verdict and again in state habeas proceedings.

A jury found Andrade guilty of two counts of petty theft with a prior conviction. According to California law, a jury must also find that a defendant has been convicted of at least two serious or violent felonies that serve as qualifying offenses under the three strikes regime. In this case, the jury made a special finding that Andrade was convicted of three counts of first-degree residential burglary. A conviction for first-degree residential burglary qualifies as a serious or violent felony for the purposes of the three strikes law. Cal. Penal Code Ann. §§ 667.5, 1192.7 (West 1999); see also *Ewing* v. *California, ante,* at 19. As a consequence, each of Andrade's convictions for theft under Cal. Penal Code Ann. § 666 (West Supp. 2002) triggered a separate application of the three strikes law. Pursuant to California law, the judge sentenced Andrade to two consecutive terms of 25 years to life in prison. See §§ 667(c)(6), 667(e)(2)(B). The State stated at oral argument that under the decision announced by the Supreme Court of California in *People* v. *Garcia,* 20 Cal. 4th 490, 976 P. 2d 831 (1999)—a decision that postdates his conviction and sentence—it remains "available" for Andrade to "file another State habeas corpus petition" arguing that he should serve only one term of 25 years to life in prison because "sentencing courts have a right to dismiss strikes on a count-by-count basis." Tr. of Oral Arg. 24.

B

On direct appeal in 1997, the California Court of Appeal affirmed Andrade's sentence of two consecutive terms of 25 years to life in prison. It rejected Andrade's claim that his sentence violates the constitutional prohibition against cruel and unusual punishment. The court stated that "the proportionality analysis" of *Solem* v. *Helm,* 463 U. S. 277 (1983), "is questionable in light of" *Harmelin* v. *Michigan,* 501 U. S. 957 (1991). App. to Pet. for Cert. 76. The court then ap-

plied our decision in *Rummel* v. *Estelle*, 445 U. S. 263 (1980), where we rejected the defendant's claim that a life sentence was "'grossly disproportionate' to the three felonies that formed the predicate for his sentence." *Id.*, at 265. The California Court of Appeal then examined Andrade's claim in light of the facts in *Rummel:* "Comparing [Andrade's] crimes and criminal history with that of defendant Rummel, we cannot say the sentence of 50 years to life at issue in this case is disproportionate and constitutes cruel and unusual punishment under the United States Constitution." App. to Pet. for Cert. 76–77.

After the Supreme Court of California denied discretionary review, Andrade filed a petition for a writ of habeas corpus in Federal District Court. The District Court denied his petition. The Ninth Circuit granted Andrade a certificate of appealability as to his claim that his sentence violated the Eighth Amendment, and subsequently reversed the judgment of the District Court. 270 F. 3d 743 (2001).

The Ninth Circuit first noted that it was reviewing Andrade's petition under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214. Applying its own precedent, the Ninth Circuit held that an unreasonable application of clearly established federal law occurs "when our independent review of the legal question 'leaves us with a "firm conviction" that one answer, the one rejected by the [state] court, was correct and the other, the application of the federal law that the [state] court adopted, was erroneous—in other words that clear error occurred.'" 270 F. 3d, at 753 (alteration in original) (quoting *Van Tran* v. *Lindsey*, 212 F. 3d 1143, 1153–1154 (CA9 2000)).

The court then reviewed our three most recent major precedents in this area—*Rummel* v. *Estelle, supra, Solem* v. *Helm, supra,* and *Harmelin* v. *Michigan, supra.* The Ninth Circuit "follow[ed] the test prescribed by Justice Kennedy in *Harmelin*," concluding that "both *Rummel* and *Solem* remain good law and are instructive in *Harmelin*'s applica-

tion." 270 F. 3d, at 766. It then noted that the California Court of Appeal compared the facts of Andrade's case to the facts of *Rummel,* but not *Solem.* 270 F. 3d, at 766. The Ninth Circuit concluded that it should grant the writ of habeas corpus because the state court's "disregard for *Solem* results in an unreasonable application of clearly established Supreme Court law," and "is irreconcilable with . . . *Solem,*" thus constituting "clear error." *Id.,* at 766–767.

Judge Sneed dissented in relevant part. He wrote that "[t]he sentence imposed in this case is not one of the 'exceedingly rare' terms of imprisonment prohibited by the Eighth Amendment's proscription against cruel and unusual punishment." *Id.,* at 767 (quoting *Harmelin* v. *Michigan, supra,* at 1001 (KENNEDY, J., concurring in part and concurring in judgment)). Under his view, the state court decision upholding Andrade's sentence was thus "not an unreasonable application of clearly established federal law." 270 F. 3d, at 772. We granted certiorari, 535 U. S. 969 (2002), and now reverse.

## II

Andrade's argument in this Court is that two consecutive terms of 25 years to life for stealing approximately $150 in videotapes is grossly disproportionate in violation of the Eighth Amendment. Andrade similarly maintains that the state court decision affirming his sentence is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. § 2254(d)(1).

AEDPA circumscribes a federal habeas court's review of a state court decision. Section 2254 provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."

The Ninth Circuit requires federal habeas courts to review the state court decision *de novo* before applying the AEDPA standard of review. See, *e. g., Van Tran* v. *Lindsey, supra,* at 1154–1155; *Clark* v. *Murphy,* 317 F. 3d 1038, 1044, n. 3 (CA9 2003). We disagree with this approach. AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1)—whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law. See *Weeks* v. *Angelone,* 528 U. S. 225 (2000). In this case, we do not reach the question whether the state court erred and instead focus solely on whether § 2254(d) forecloses habeas relief on Andrade's Eighth Amendment claim.

## III

## A

As a threshold matter here, we first decide what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Andrade relies upon a series of precedents from this Court—*Rummel* v. *Estelle, supra, Solem* v. *Helm,* 463 U. S. 277 (1983), and *Harmelin* v. *Michigan,* 501 U. S. 957 (1991)—that he claims clearly establish a principle that his sentence is so grossly disproportionate that it violates the Eighth Amendment. Section 2254(d)(1)'s "clearly established" phrase "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams* v. *Taylor,* 529 U. S. 362, 412 (2000). In other words, "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state

court renders its decision.   See *id.*, at 405, 413; *Bell* v. *Cone*,
535 U. S. 685, 698 (2002).   In most situations, the task of de-
termining what we have clearly established will be straight-
forward.   The difficulty with Andrade's position, however, is
that our precedents in this area have not been a model of
clarity.   See *Harmelin* v. *Michigan*, 501 U. S., at 965 (opin-
ion of SCALIA, J.); *id.*, at 996, 998 (KENNEDY, J., concurring in
part and concurring in judgment).   Indeed, in determining
whether a particular sentence for a term of years can violate
the Eighth Amendment, we have not established a clear or
consistent path for courts to follow.   See *Ewing* v. *Califor-
nia, ante*, at 20–23.

## B

Through this thicket of Eighth Amendment jurisprudence,
one governing legal principle emerges as "clearly estab-
lished" under §2254(d)(1): A gross disproportionality princi-
ple is applicable to sentences for terms of years.

Our cases exhibit a lack of clarity regarding what factors
may indicate gross disproportionality.   In *Solem* (the case
upon which Andrade relies most heavily), we stated: "It is
clear that a 25-year sentence generally is more severe than
a 15-year sentence, but in most cases it would be difficult to
decide that the former violates the Eighth Amendment while
the latter does not."   463 U. S., at 294 (footnote omitted).
And in *Harmelin*, both JUSTICE KENNEDY and JUSTICE
SCALIA repeatedly emphasized this lack of clarity: that
"*Solem* was scarcely the expression of clear . . . constitutional
law," 501 U. S., at 965 (opinion of SCALIA, J.), that in "adher-
[ing] to the narrow proportionality principle . . . our propor-
tionality decisions have not been clear or consistent in all
respects," *id.*, at 996 (KENNEDY, J., concurring in part and
concurring in judgment), that "we lack clear objective stand-
ards to distinguish between sentences for different terms of
years," *id.*, at 1001 (KENNEDY, J., concurring in part and con-
curring in judgment), and that the "precise contours" of the

proportionality principle "are unclear," *id.*, at 998 (KEN-NEDY, J., concurring in part and concurring in judgment).

Thus, in this case, the only relevant clearly established law amenable to the "contrary to" or "unreasonable application of" framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the "exceedingly rare" and "extreme" case. *Id.*, at 1001 (KEN-NEDY, J., concurring in part and concurring in judgment) (internal quotation marks omitted); see also *Solem* v. *Helm, supra,* at 290; *Rummel* v. *Estelle,* 445 U. S., at 272.

## IV

The final question is whether the California Court of Appeal's decision affirming Andrade's sentence is "contrary to, or involved an unreasonable application of," this clearly established gross disproportionality principle.

First, a state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams* v. *Taylor, supra,* at 405–406; see also *Bell* v. *Cone, supra,* at 694. In terms of length of sentence and availability of parole, severity of the underlying offense, and the impact of recidivism, Andrade's sentence implicates factors relevant in both *Rummel* and *Solem.* Because *Harmelin* and *Solem* specifically stated that they did not overrule *Rummel,* it was not contrary to our clearly established law for the California Court of Appeal to turn to *Rummel* in deciding whether a sentence is grossly disproportionate. See *Harmelin, supra,* at 998 (KENNEDY, J., concurring in part and concurring in judgment); *Solem, supra,* at 288, n. 13, 303–304, n. 32. Indeed, *Harmelin* allows a state court to reasonably rely on *Rummel* in determining whether a sentence is grossly disproportionate. The California Court of Appeal's decision

was therefore not "contrary to" the governing legal principles set forth in our cases.

Andrade's sentence also was not materially indistinguishable from the facts in *Solem.* The facts here fall in between the facts in *Rummel* and the facts in *Solem. Solem* involved a sentence of life in prison without the possibility of parole. 463 U. S., at 279. The defendant in *Rummel* was sentenced to life in prison with the possibility of parole. 445 U. S., at 267. Here, Andrade retains the possibility of parole. *Solem* acknowledged that *Rummel* would apply in a "similar factual situation." 463 U. S., at 304, n. 32. And while this case resembles to some degree both *Rummel* and *Solem,* it is not materially indistinguishable from either. Cf. *Ewing* v. *California, ante,* at 40 (BREYER, J., dissenting) (recognizing a "twilight zone between *Solem* and *Rummel"*). Consequently, the state court did not "confron[t] a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arriv[e] at a result different from our precedent." *Williams* v. *Taylor,* 529 U. S., at 406.[1]

---

[1] JUSTICE SOUTER argues that the possibility of Andrade's receiving parole in 50 years makes this case similar to the facts in *Solem* v. *Helm,* 463 U. S. 277 (1983). *Post,* at 78–79 (dissenting opinion). Andrade's sentence, however, is also similar to the facts in *Rummel* v. *Estelle,* 445 U. S. 263 (1980), a case that is also "controlling." *Post,* at 78. Given the lack of clarity of our precedents in *Solem, Rummel,* and *Harmelin* v. *Michigan,* 501 U. S. 957 (1991), we cannot say that the state court's affirmance of two sentences of 25 years to life in prison was contrary to our clearly established precedent. And to the extent that JUSTICE SOUTER is arguing that the similarity of *Solem* to this case entitles Andrade to relief under the unreasonable application prong of § 2254(d), we reject his analysis for the reasons given *infra,* at 76–77. Moreover, it is not true that Andrade's "sentence can only be understood as punishment for the total amount he stole." *Post,* at 78. To the contrary, California law specifically provides that *each* violation of Cal. Penal Code Ann. § 666 (West Supp. 2002) triggers a separate application of the three strikes law, if the different felony counts are "not arising from the same set of operative facts." § 667(c)(6) (West 1999); see also § 667(e)(2)(B). Here, Andrade was sentenced to two consecutive terms under California law precisely because the two thefts

Second, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.*, at 410, 412. The state court's application of clearly established law must be objectively unreasonable. *Id.*, at 409.

The Ninth Circuit made an initial error in its "unreasonable application" analysis. In *Van Tran* v. *Lindsey,* 212 F. 3d, at 1152–1154, the Ninth Circuit defined "objectively unreasonable" to mean "clear error." These two standards, however, are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness. See *Williams* v. *Taylor, supra,* at 410; *Bell* v. *Cone,* 535 U. S., at 699.

It is not enough that a federal habeas court, in its "independent review of the legal question," is left with a "'firm conviction'" that the state court was "'erroneous.'" 270 F. 3d, at 753 (quoting *Van Tran* v. *Lindsey, supra,* at 1153–1154). We have held precisely the opposite: "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that

---

of two different Kmart stores occurring two weeks apart were two distinct crimes.

JUSTICE SOUTER, relying on *Robinson* v. *California,* 370 U. S. 660 (1962), also argues that in this case, it is "unrealistic" to think that a sentence of 50 years to life for Andrade is not equivalent to life in prison without parole. *Post,* at 79. This argument, however, misses the point. Based on our precedents, the state court decision was not contrary to, or an unreasonable application of, our clearly established law. Moreover, JUSTICE SOUTER's position would treat a sentence of life without parole for the 77-year-old person convicted of murder as equivalent to a sentence of life with the possibility of parole in 10 years for the same person convicted of the same crime. Two different sentences do not become materially indistinguishable based solely upon the age of the persons sentenced.

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams* v. *Taylor,* 529 U. S., at 411. Rather, that application must be objectively unreasonable. *Id.,* at 409; *Bell* v. *Cone, supra,* at 699; *Woodford* v. *Visciotti,* 537 U. S. 19, 27 (2002) *(per curiam).*

Section 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced. See, *e. g., Williams* v. *Taylor, supra,* at 407 (noting that it is "an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"). Here, however, the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle—the "precise contours" of which "are unclear." *Harmelin* v. *Michigan,* 501 U. S., at 998 (KENNEDY, J., concurring in part and concurring in judgment). And it was not objectively unreasonable for the California Court of Appeal to conclude that these "contours" permitted an affirmance of Andrade's sentence.

Indeed, since *Harmelin,* several Members of this Court have expressed "uncertainty" regarding the application of the proportionality principle to the California three strikes law. *Riggs* v. *California,* 525 U. S. 1114, 1115 (1999) (STEVENS, J., joined by SOUTER and GINSBURG, JJ., respecting denial of certiorari) ("[T]here is some uncertainty about how our cases dealing with the punishment of recidivists should apply"); see also *id.,* at 1116 ("It is thus unclear how, if at all, a defendant's criminal record beyond the requisite two prior 'strikes' . . . affects the constitutionality of his sentence"); cf. *Durden* v. *California,* 531 U. S. 1184 (2001) (SOUTER, J., joined by BREYER, J., dissenting from denial of certiorari) (arguing that the Court should hear the three strikes gross

disproportionality issue on direct review because of the "potential for disagreement over application of" AEDPA).[2]

The gross disproportionality principle reserves a constitutional violation for only the extraordinary case. In applying this principle for § 2254(d)(1) purposes, it was not an unreasonable application of our clearly established law for the California Court of Appeal to affirm Andrade's sentence of two consecutive terms of 25 years to life in prison.

## V

The judgment of the United States Court of Appeals for the Ninth Circuit, accordingly, is reversed.

*It is so ordered.*

JUSTICE SOUTER, with whom JUSTICE STEVENS, JUSTICE GINSBURG, and JUSTICE BREYER join, dissenting.

The application of the Eighth Amendment prohibition against cruel and unusual punishment to terms of years is articulated in the "clearly established" principle acknowledged by the Court: a sentence grossly disproportionate to the offense for which it is imposed is unconstitutional. See *ante*, at 72–73; *Harmelin* v. *Michigan*, 501 U. S. 957 (1991); *Solem* v. *Helm*, 463 U. S. 277 (1983); *Rummel* v. *Estelle*, 445 U. S. 263 (1980). For the reasons set forth in JUSTICE BREYER's dissent in *Ewing* v. *California*, *ante*, at 35, which I joined, Andrade's sentence cannot survive Eighth Amendment review. His criminal history is less grave than Ewing's, and yet he received a prison term twice as long for a less serious triggering offense. To be sure, this is a habeas case and a prohibition couched in terms as general as gross

---

[2] JUSTICE SOUTER would hold that Andrade's sentence also violates the unreasonable application prong of § 2254(d)(1). *Post*, at 79–82. His reasons, however, do not change the "uncertainty" of the scope of the proportionality principle. We cannot say that the state court decision was an unreasonable application of this principle.

disproportion necessarily leaves state courts with much leeway under the statutory criterion that conditions federal relief upon finding that a state court unreasonably applied clear law, see 28 U. S. C. § 2254(d).   This case nonetheless presents two independent reasons for holding that the disproportionality review by the state court was not only erroneous but unreasonable, entitling Andrade to relief.   I respectfully dissent accordingly.

The first reason is the holding in *Solem*, which happens to be our most recent effort at proportionality review of recidivist sentencing, the authority of which was not left in doubt by *Harmelin*, see 501 U. S., at 998.   Although *Solem* is important for its instructions about applying objective proportionality analysis, see 463 U. S., at 290–292, the case is controlling here because it established a benchmark in applying the general principle.   We specifically held that a sentence of life imprisonment without parole for uttering a $100 "no account" check was disproportionate to the crime, even though the defendant had committed six prior nonviolent felonies.   In explaining our proportionality review, we contrasted the result with *Rummel*'s on the ground that the life sentence there had included parole eligibility after 12 years, *Solem*, 463 U. S., at 297.

The facts here are on all fours with those of *Solem* and point to the same result.   *Id.*, at 279–281.   Andrade, like the defendant in *Solem*, was a repeat offender who committed theft of fairly trifling value, some $150, and their criminal records are comparable, including burglary (though Andrade's were residential), with no violent crimes or crimes against the person.   The respective sentences, too, are strikingly alike.   Although Andrade's petty thefts occurred on two separate occasions, his sentence can only be understood as punishment for the total amount he stole.   The two thefts were separated by only two weeks; they involved the same victim; they apparently constituted parts of a single, continuing effort to finance drug sales; their seriousness is measured

by the dollar value of the things taken; and the government charged both thefts in a single indictment. Cf. United States Sentencing Commission, Guidelines Manual § 3D1.2 (Nov. 2002) (grouping temporally separated counts as one offense for sentencing purposes). The state court accordingly spoke of his punishment collectively as well, carrying a 50-year minimum before parole eligibility, see App. to Pet. for Cert. 77 ("[W]e cannot say the sentence of 50 years to life at issue in this case is disproportionate"), and because Andrade was 37 years old when sentenced, the substantial 50-year period amounts to life without parole. *Solem, supra,* at 287 (when considering whether a punishment is cruel or unusual " 'the question cannot be considered in the abstract' " (quoting *Robinson* v. *California,* 370 U. S. 660, 667 (1962))); cf. *Rummel, supra,* at 280–281 (defendant's eligibility for parole in 12 years informs a proper assessment of his cruel and unusual punishment claim). The results under the Eighth Amendment should therefore be the same in each case. The only ways to reach a different conclusion are to reject the practical equivalence of a life sentence without parole and one with parole eligibility at 87, see *ante,* at 74 ("Andrade retains the possibility of parole"), or to discount the continuing authority of *Solem*'s example, as the California court did, see App. to Pet. for Cert. 76 ("[T]he current validity of the Solem proportionality analysis is questionable"). The former is unrealistic; an 87-year-old man released after 50 years behind bars will have no real life left, if he survives to be released at all. And the latter, disparaging *Solem* as a point of reference on Eighth Amendment analysis, is wrong as a matter of law.

The second reason that relief is required even under the § 2254(d) unreasonable application standard rests on the alternative way of looking at Andrade's 50-year sentence as two separate 25-year applications of the three-strikes law, and construing the challenge here as going to the second, consecutive 25-year minimum term triggered by a petty

theft.[1]  To understand why it is revealing to look at the
sentence this way, it helps to recall the basic difficulty inher-
ent in proportionality review.  We require the comparison
of offense and penalty to disclose a truly gross disproportion-
ality before the constitutional limit is passed, in large part
because we believe that legislatures are institutionally
equipped with better judgment than courts in deciding what
penalty is merited by particular behavior.  *Solem, supra*, at
290.  In this case, however, a court is substantially aided in
its reviewing function by two determinations made by the
State itself.

The first is the State's adoption of a particular penalogical
theory as its principal reason for shutting a three-strikes de-
fendant away for at least 25 years.  Although the State al-
ludes in passing to retribution or deterrence (see Brief for
Petitioner 16, 24; Reply Brief for Petitioner 10), its only seri-
ous justification for the 25-year minimum treats the sentence
as a way to incapacitate a given defendant from further
crime; the underlying theory is the need to protect the public
from a danger demonstrated by the prior record of violent
and serious crime.  See Brief for Petitioner 17 ("significant
danger to society such that [defendant] must be imprisoned
for no less than twenty-five years to life"); *id.*, at 21 ("statute
carefully tailored to address . . . defendants that pose the
greatest danger"); *id.*, at 23 ("isolating such a defendant
for a substantial period of time"); Reply Brief for Petitioner
11 ("If Andrade's reasoning were accepted, however, Cali-
fornia would be precluded from incapacitating him").  See
also *Rummel,* 445 U. S., at 284 ("purpose of a recidivist

---

[1] This point is independent of the fact, recognized by the Court, *ante*, at
68, that it remains open to Andrade to appeal his sentence under *People*
v. *Garcia,* 20 Cal. 4th 490, 976 P. 2d 831 (1999) (holding trial court may
dismiss strikes on a count-by-count basis; such discretion is consistent with
mandatory consecutive sentencing provision).

statute . . . [is] to segregate").[2] The State, in other words
has not chosen 25 to life because of the inherent moral or
social reprehensibility of the triggering offense in isolation;
the triggering offense is treated so seriously, rather, because
of its confirmation of the defendant's danger to society and
the need to counter his threat with incapacitation. As to
the length of incapacitation, the State has made a second
helpful determination, that the public risk or danger posed
by someone with the specified predicate record is generally
addressed by incapacitation for 25 years before parole eligi-
bility. Cal. Penal Code Ann. § 667(e)(2)(A)(ii) (West 1999).
The three-strikes law, in sum, responds to a condition of the
defendant shown by his prior felony record, his danger to
society, and it reflects a judgment that 25 years of incapacita-
tion prior to parole eligibility is appropriate when a defend-
ant exhibiting such a condition commits another felony.

Whether or not one accepts the State's choice of penalogi-
cal policy as constitutionally sound, that policy cannot rea-

---

[2] Implicit in the distinction between future dangerousness and repunish-
ment for prior crimes is the notion that the triggering offense must, within
some degree, be substantial enough to bear the weight of the sentence it
elicits. As triggering offenses become increasingly minor and recidivist
sentences grow, the sentences advance toward double jeopardy violations.
When defendants are parking violators or slow readers of borrowed li-
brary books, there is not much room for belief, even in light of a past
criminal record, that the State is permanently incapacitating the defend-
ant because of future dangerousness rather than resentencing for past
offenses.

That said, I do not question the legitimacy of repeatedly sentencing a
defendant in light of his criminal record: the Federal Sentencing Guide-
lines provide a prime example of how a sentencing scheme may take into
account a defendant's criminal history without resentencing a defendant
for past convictions, *Witte* v. *United States*, 515 U. S. 389, 403 (1995) (the
triggering offense determines the range of possible sentences, and the past
criminal record affects an enhancement of that sentence). The point is
merely that the triggering offense must reasonably support the weight of
even the harshest possible sentences.

sonably justify the imposition of a consecutive 25-year minimum for a second minor felony committed soon after the first triggering offense. Andrade did not somehow become twice as dangerous to society when he stole the second handful of videotapes; his dangerousness may justify treating one minor felony as serious and warranting long incapacitation, but a second such felony does not disclose greater danger warranting substantially longer incapacitation. Since the defendant's condition has not changed between the two closely related thefts, the incapacitation penalty is not open to the simple arithmetic of multiplying the punishment by two, without resulting in gross disproportion even under the State's chosen benchmark. Far from attempting a novel penal theory to justify doubling the sentence, the California Court of Appeal offered no comment at all as to the particular penal theory supporting such a punishment. App. to Pet. for Cert. 76–79. Perhaps even more tellingly, no one could seriously argue that the second theft of videotapes provided any basis to think that Andrade would be so dangerous after 25 years, the date on which the consecutive sentence would begin to run, as to require at least 25 years more. I know of no jurisdiction that would add 25 years of imprisonment simply to reflect the fact that the two temporally related thefts took place on two separate occasions, and I am not surprised that California has found no such case, not even under its three-strikes law. Tr. of Oral Arg. 52 (State's counsel acknowledging "I have no reference to any 50-year-to-life sentences based on two convictions"). In sum, the argument that repeating a trivial crime justifies doubling a 25-year minimum incapacitation sentence based on a threat to the public does not raise a seriously debatable point on which judgments might reasonably differ. The argument is irrational, and the state court's acceptance of it in response to a facially gross disproportion between triggering offense and penalty was unreasonable within the meaning of § 2254(d).

This is the rare sentence of demonstrable gross disproportionality, as the California Legislature may well have recognized when it specifically provided that a prosecutor may move to dismiss or strike a prior felony conviction "in the furtherance of justice." Cal. Penal Code Ann. § 667(f)(2) (West 1999). In this case, the statutory safeguard failed, and the state court was left to ensure that the Eighth Amendment prohibition on grossly disproportionate sentences was met. If Andrade's sentence is not grossly disproportionate, the principle has no meaning. The California court's holding was an unreasonable application of clearly established precedent.