Darryl KING, Petitioner–Appellant,

v.

NEW YORK STATE DIVISION OF PAROLE, New York State Board of Parole, & Robert Dennison, Respondents–Appellees.

No. 05–1860–pr.

United States Court of Appeals, Second Circuit.

Jan. 16, 2008.

Myron Beldock, Vera M. Scanlon, Beldock, Levine & Hoffman LLP, New York, NY, for Petitioner–Appellant.

Lisa Fleischmann, Assistant Attorney General (Andrew M. Cuomo, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Luke Martland, Assistant Attorney General, on the brief), New York, NY, for Respondents–Appellees.

PRESENT: Hon. CHESTER J. STRAUB, Hon. RICHARD C. WESLEY, Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Petitioner Darryl King appeals from the judgment of the United States District Court for the Eastern District of New York (Allyne R. Ross, *Judge*) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On appeal, King argues that the District Court erred in concluding that the September 2000 decision by the New York State Board of Parole (the "Board") to revoke his erroneously granted discharge from supervised parole and its denials in June 2001 and March 2003 of his discharge requests did not violate King's rights protected by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.[1] We presume the parties' familiarity with the underlying facts and procedural history of the case.

We review a district court's denial of a petition for a writ of habeas corpus *de novo*. *Eze v. Senkowski*, 321 F.3d 110, 120

---

1. On March 2, 2007, King submitted a motion to expand the record to include documents previously requested from, but not provided by, Respondents–Appellees. We grant King's motion and have considered the documents in question.

(2d Cir.2003). If a state court has already adjudicated a claim on the merits, we may not grant the writ unless the state court proceedings either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or,

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to ... clearly established Federal law" if the state court reached a "conclusion opposite to that reached by [the Supreme] Court on a question of law," or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that precedent. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision constitutes an "unreasonable application" of such precedent when the state court "identifies the correct governing legal rule" but "unreasonably applies it to the facts" of the case, "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S.Ct. 1495. To be an "unreasonable application" of clearly established federal law, the state court decision must be "objectively unreasonable" and not merely "incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

In his petition, King does not argue that the Appellate Division reached any unreasonable factual determinations in his case. Instead, King argues that the Appellate Division failed to apply existing law governing his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. With regard to his Due Process claim, King advances two theories of relief. The first is that the Board's revocation of his discharge from parole in September 2000 violated his due process rights because he was allegedly deprived of a protectible liberty interest with no pre-deprivation hearing. Due to the fact that the Appellate Division of the New York Supreme Court considered and rejected this claim on the merits, we must decide whether that state court proceeding was "contrary to" or an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

The Supreme Court has instructed that whether a purported right is protected by the Due Process Clause of Fourteenth Amendment depends on the "nature of the interest at stake." *Bd. of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Specifically, in order to consider a right protectible, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. In arguing that he had such an entitlement to his discharge from parole once it had been given, erroneously or not, King relies primarily upon two Supreme Court decisions. In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Court held that a parolee must be given a hearing prior to having his parole status revoked and being incarcerated again. Similarly, in *Young v. Harper*, 520 U.S. 143, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997), the Court extended the holding of *Morrissey* to revocations of "preparole"—a temporary status conferred on certain Oklahoma inmates by which the state

parole board would release the inmate and subject him to normal parole conditions and supervision. *Id.* at 145, 149–53, 117 S.Ct. 1148. The Oklahoma governor would eventually decide whether the pre-parolee deserved full parole status; if not, the preparolee would be returned to incarceration. *Id.* (holding that a preparolee deserved a pre-deprivation hearing).

■ Based upon these decisions identifying a "liberty interest" in such circumstances, King argues that a parolee who has been informed of his discharge from parole surely must also have such a liberty interest.[2] However, there is a significant difference between a parolee or preparolee losing such status—and, thus, facing reincarceration—and a recently and erroneously discharged parolee who must return to his status of only a few weeks before. Regardless, King has identified no decision by the Supreme Court, this Court, or any other federal court addressing a claim by a former parolee who had been mistakenly discharged from parole.[3] Given the total absence of authority on the due process rights of an individual in King's position, we cannot conclude that the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" within the meaning of 28 U.S.C. § 2254(d)(1).

■ King's second due process argument is that the Board violated his due process rights when it revoked his discharge status in September 2000 and denied his discharge request in June 2001 and March 2003; King argues that these decisions were "irrational, arbitrary or capricious." *See Hamdi v. Rumsfeld,* 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). King presented this claim to the Appellate Division and it was rejected on its merits. Therefore, we review the decision of the Appellate Division to determine whether it was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). With regard to the September 2000 revocation, King disputes the legitimacy of the two rationales provided by the Board: (1) the absence of a mental status report in his file, and (2) a miscalculation by the Board of the number of months King had spent on supervised parole or work-release. Irrespective of the number of months King had been a supervised parolee, he offers no persuasive argument why it was "irrational, arbitrary or capricious" for the Board to revoke his discharge while completed and submitted a

---

2. In a similar vein, King argues that regulations governing Board decisions to rescind an individual's parole status "should have at least guided" the Board in its decision to revoke his discharge from parole. In advancing this argument, King cites decisions by the New York courts interpreting such regulations and considering the process due to a parolee whose parole status may be rescinded. However, King fails to identify any regulation specifically addressing the revocation of a parolee's erroneous discharge from parole. Indeed, the only apparently applicable regulation simply provides that "[i]n its discretion, the [B]oard may revoke or modify any of its decisions or determinations." 9 N.Y.C.R.R. § 8000.4. Lacking any basis that the Board violated its own regulations in his case, King's argument here is largely the same as his argument that a parolee who has been erroneously discharged has the same due process rights as a parolee or preparolee whose status may be rescinded.

3. King also relies upon *Earley v. Murray,* 451 F.3d 71 (2d Cir.2006), where we held that a state agency may not administratively alter a sentence imposed by a state court without violating the Due Process Clause. *Id.* at 75–76. However, such a situation is distinguishable from the instant case, where an agency erroneously provides discretionary relief from a proper sentence, recognizes its error, and reverses its decision.

mental status report. On this point, King only cites his own affidavit as evidence that an unidentified parole officer had informed King that such a report was unnecessary. Such a paucity of evidence is insufficient to demonstrate that the Board's decision was "irrational, arbitrary or capricious."

As to the subsequent denials of his discharge requests, King argues that the Board provided "improper reasons" for these decisions that were "entirely different" from those used to justify the revocation of his discharge. However, the relevant statute provided the Board with broad authority to grant a discharge from parole if the Board was "satisfied" that such action would be "in the best interests of society." N.Y. Exec. Law § 259–j(4). The Board based its June 2001 denial of King's request for a discharge upon the "extremely violent nature of the instant offense, during the course of which a human life was taken (off duty NYC police officer)." In March 2003, the Board denied King's request on the ground that his discharge "is not in the best interests of society" due to the "extreme seriousness of the instant offense wherein an off duty police officer was shot to death." At that time, the Board recognized that King "has made a positive adjustment to supervision," but it stated that granting his "discharge would deprecate the seriousness of his crime as to undermine respect for the law." King characterizes these rationales as "old facts [that] will never change, no matter how long Mr. King stays on parole as a model parolee." In addition, King speculates that another motivation behind the denials of his discharge requests was the "anti-parole policy" of the New York governor. In advancing these arguments,

King essentially questions the fairness of the New York parole statute for parolees, like himself, who have been convicted of violent crimes and speculates that political considerations affect the Board's decision-making. King also argues that the Board's expressed rationale for denying his discharge request cannot be the true motivation because it differs from the reasons provided by the Board ten months earlier in rescinding his discharge from parole on the ground that it was erroneously given. However, it should not be surprising that the Board would articulate different rationales for different agency decisions in different contexts, and King has identified no statutory or regulatory requirement that the Board must always apply the identical justifications to all of its decisions regarding the same parolee. As with his challenge to the September 2000 revocation of his discharge from parole, King cannot rely upon mere speculation and conjecture in arguing that the subsequent denials of his discharge requests were "irrational, arbitrary or capricious."

King's Equal Protection claim does not require lengthy analysis.[4] In asserting a claim based upon the Equal Protection Clause, King relies upon the "class of one" theory articulated in *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). In that decision, the Supreme Court recognized the viability of an Equal Protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564, 120 S.Ct. 1073. We have subsequently held that "the level of similarity between [such] plaintiffs and the persons with whom they compare them-

---

4. We agree with the District Court that King's Equal Protection claim is unexhausted because he did not raise it before the Appellate Division. However, like the District Court, we reach the merits of King's claim. 28 U.S.C. § 2254(b)(2).

selves must be extremely high." *Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir. 2005). Here, as the District Court observed, King has failed to identify a single individual with whom he can be compared for Equal Protection purposes. As a result, this claim is wholly deficient, and the District Court did not err in denying King's petition on this ground.[5]

In sum, we have considered all arguments presented by King in this appeal and find them to be without merit. For the foregoing reasons, we GRANT King's motion to expand the record and AFFIRM the judgment of the District Court.

---

**5.** King attempts to redeem his Equal Protection claim by arguing that the District Court erred in denying his request for discovery on this claim. However, the District Court did not exceed its allowable discretion in this regard because King's request appears overly broad and vague. As such, King failed to demonstrate "good cause" for the discovery. *See* Rules Governing Section 2254 Cases, Rule 6(a), 28 U.S.C.A. foll. § 2254. Therefore, the District Court properly denied his request.