# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-2573

_____

Rahsaan Taylor

*Plaintiff - Appellant*

v.

Wendy Kelley, Director, Arkansas Department of Correction

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: March 18, 2016
Filed: June 9, 2016

_____

Before WOLLMAN, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Rahsaan Taylor petitions for federal habeas relief from a March 2010 Arkansas state court conviction for capital felony murder based on ineffective assistance of counsel for failure to present sufficient evidence at trial that Taylor was incapable of running at the time police witnesses testified that Taylor ran from them. The Arkansas Supreme Court found that Taylor had not been prejudiced by the failure to

present such evidence. The district court found the Arkansas Supreme Court's analysis to be reasonable and denied the petition.[1] We affirm.

## I.

On October 31, 2007, in Little Rock, Arkansas, Taylor asked Tyeiska Roberson, who was driving a black car with her brother as a passenger, for a ride. Taylor entered the vehicle and asked Roberson to follow a maroon truck. Roberson followed the truck into a trailer park and parked her car in front of the truck. Taylor and Roberson's brother exited the vehicle and approached the driver of the maroon truck; Taylor held a gun. A few minutes later, Roberson heard gun shots and Taylor and Roberson's brother reentered the vehicle. Roberson drove away at Taylor's request.

Four days later, on November 4, 2007, Roberson, Taylor, and Roberson's brother were driving in the same car when a police vehicle turned on its lights, signaling Roberson to pull over. Taylor instructed Roberson not to stop the car because he was "hot." Roberson pulled over and stopped. The car was illuminated by the police vehicle's spotlights. As Officers Thomas and Prater approached the car, Taylor looked at the officers, exited through the passenger door, and started running. Officer Prater saw Taylor's face. He followed Taylor into a wooded area towards a culvert. At some point during the chase, Officer Prater and Taylor jumped a fence. Taylor fell, dropped a gun, and retrieved it. Taylor then entered the culvert. Officer Prater decided that because Taylor was armed, it would not be safe for him to follow Taylor further into the culvert. The officers called for back up.

Officers Quiller and Passman set up a perimeter where Taylor would most likely exit the culvert. Officers Quiller and Passman saw Taylor exit the culvert, walk

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

through a lit parking lot, start running, drop his jacket, and head towards a service station. The officers chased Taylor. Taylor looked back during the pursuit and Officers Quiller and Passman saw his face. Taylor entered a car at the service station. Officer Passman reached the car, stooped down to look into the vehicle through a door, and again saw Taylor's face. As Taylor began to drive away, Taylor and Officer Passman made eye contact. Officer Hawkins, who was also at the scene, saw Taylor get into the car. Officer Hawkins followed Taylor to a house where Taylor was then residing. Taylor exited the car, looked back at Officer Hawkins, who was able to see Taylor's face, and jumped a fence. The officers later retrieved the dropped jacket and discovered the gun used in the October 31, 2007 shooting in its pocket. A purse stolen earlier that evening was found in Roberson's car.

At trial, Roberson testified to the events she had witnessed while driving with Taylor. All five police officers testified as well. Four were able to identify the runner as Taylor. The defense called Taylor's friend, Nicole Swopes, who testified that Taylor had been in a severe car accident which affected his ability to walk through November 2007 and stated that she had spent the evening of October 31, 2007 trick-or-treating with Taylor and her family. The defense attempted to call Taylor's mother, Mary Moore, to the stand, but because the defense had failed to identify her as a witness, the trial court did not allow her to testify. Taylor was convicted of capital murder and sentenced to life in prison without parole.

Taylor appealed his conviction and sentence to the Arkansas Supreme Court, arguing that Roberson's testimony was not corroborated by sufficient evidence. The court affirmed. Taylor then filed a timely petition for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure, claiming that his trial counsel had provided ineffective assistance by failing to present sufficient evidence of his car accident and his resulting physical inability to flee from police. A Rule 37 hearing was held at which testimony from Moore and Dr. James Kebler, an orthopedic surgeon, was presented. Moore stated that her son was physically incapable of

walking long distances or climbing stairs in October and November of 2007. Dr. Kebler, based only on Taylor's medical records, his expertise, internet research, Moore's testimony, and without examining Taylor, stated that he was 90-95% certain that Taylor would have been physically incapable of being the individual whom the police had chased on November 4, 2007. The state circuit court denied Taylor's petition for post-conviction relief and Taylor appealed. The Arkansas Supreme Court affirmed, finding that Moore's and Dr. Kebler's testimony would have been cumulative to Swopes' testimony and further noting the limited information upon which Dr. Kebler based his opinion.

Taylor next filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court. His claims included that his trial counsel was ineffective for failing to present medical and lay testimony showing that Taylor was incapable of running on November 4, 2007. The district court adopted the magistrate judge's recommendation, finding that Taylor had failed to establish prejudice and rejecting Taylor's claims. The district court then granted a certificate of appealability on the issue of defense counsel's failure to present evidence regarding Taylor's physical condition.

II.

We agree with the district court that the state court reasonably determined that Taylor was not prejudiced. We review the district court's denial of a state prisoner's claim for habeas relief for clear error as to findings of fact and de novo as to conclusions of law. Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002). "Ineffectiveness of counsel claims present mixed questions of law and fact, which we review de novo." Marcrum v. Luebbers, 509 F.3d 489, 501 (8th Cir. 2007).

The first filter through which we evaluate claims of ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 687 (1984). Under Strickland,

the petitioner must show first, "that counsel's performance was deficient," and second, "that the deficient performance prejudiced the defense," in order to establish that counsel was ineffective. Id. at 687. Because both prongs must be met for the petitioner to succeed, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[2] Id. at 697. The prejudice prong of Strickland is only met where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. For there to be a reasonable probability that the result would have been different, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (citing Strickland, 466 U.S. at 693). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

We then review the state court's application of Strickland under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), which requires us to defer to the state court's application of Strickland to the facts of the case. See Bell v. Cone, 535 U.S. 685, 698-99 (2002); § 2254(d). Thus, we must affirm unless we find that the state reached "a decision that was contrary to or . . . [under] an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of facts," § 2254(d), when it decided that there was not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Under § 2254(d), the "pivotal question is whether the state court's application of the Strickland standard was unreasonable." Harrington, 562 U.S. at 101. Thus, if fairminded jurists could agree with the state court's decision regarding prejudice, we

---

[2]Because we find that the state court reasonably determined that the prejudice prong of Strickland was not met, we do not address whether counsel's performance was deficient.

must affirm.  Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 71 (2003)).

Taylor argues that he was prejudiced by his counsel's failure to call his mother, Moore, as a witness, or to present expert medical testimony, either of which would show that Taylor was not capable of being the person the police chased on the night of November 4, 2007.  Further, Taylor contends that such testimony would undermine all evidence corroborating Roberson's testimony, making Roberson's testimony insufficient to convict Taylor as a matter of law.  See Ark. Code Ann. § 16-89-111(e)(1)(A) ("A conviction . . . may not be had in any case of felony upon the testimony of an accomplice, . . . unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense.").

Taylor correctly notes that some evidence relied on by the state court ties only the man observed running from police on November 4, 2007 to the crime.  For instance, it was the runner who, when Roberson pulled her car over, left a stolen purse in the car and fled from the police.  It was the runner who dropped the murder weapon when running from the police.  Roberson testified to details of the crime, but because Roberson also testified that Taylor was the runner, if Taylor could not have been the runner, Roberson's testimony loses credibility.  Based on this evidence alone, a reasonable juror could question whether Roberson simply may have substituted Taylor's name for that of another. However, significant evidence supports Roberson's testimony that Taylor was the runner. Witnesses corroborate Roberson's accounts of the crime. Four separate police officers stated that they observed Taylor's face while chasing him on November 4, 2007 and were able to identify him with certainty.  Further, during the pursuit, the runner stole a car and drove it to Taylor's residence, before hopping a fence and fleeing.

-6-

The Arkansas Supreme Court found that Moore's testimony and Dr. Kebler's testimony was cumulative because the jury heard evidence from Swopes about Taylor's injuries.[3] Further, the Arkansas Supreme Court noted that "Dr. Kebler was not Taylor's doctor, had never examined Taylor, and based his report only on Taylor's medical records and information given by Taylor's counsel and Moore." Thus it determined that, "[g]iven all the evidence, we agree with the circuit court's finding that the testimony of Moore and Dr. Kebler as to their opinions of what Taylor was physically capable of doing on October 31, 2007, would not have successfully refuted what the officers involved in the chase actually saw Taylor do."

While in certain cases it may approach unreasonableness to dismiss the only expert medical testimony presented on a potentially determinative issue, here, we find that the state court acted reasonably when it determined that Taylor suffered no prejudice. As the state court noted, Dr. Kebler had never examined Taylor. At the Rule 37 hearing, Dr. Kebler presented depictions of other hip injuries he had come across while searching the internet, rather than X-rays or scans of Taylor's hip. Dr. Kebler had not practiced in over eight years. Further, Dr. Kebler's opinion appears to have also been partially based on Moore's testimony and Dr. Kebler's own experience with his own fractured hip. Taking into account the numerous police officers' identifications of Taylor as the runner, the final location of the stolen car,

---

[3]Arguably, the state court's ruling that Dr. Kebler's medical testimony was cumulative is suspect, because Dr. Kebler's testimony could have provided medical evidence of Taylor's physical condition and increased the likelihood that the jury would believe Taylor was incapable of running in November, 2007. However, given the weaknesses of Dr. Kebler's testimony and the overwhelming evidence of guilt, the state court reasonably determined that there was not a reasonable probability that Dr. Kebler's testimony or Moore's testimony would have changed the outcome of Taylor's trial. See Armstrong v. Kemna, 590 F.3d 592, 605 (8th Cir. 2010) ("there is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming." (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996))).

and the deficits in Dr. Kebler's testimony, we find that reasonable jurists could agree that Taylor's counsel's failure to call Moore and Dr. Kebler as witnesses did not have a reasonable probability of changing the outcome. Thus, we must defer to the state court. See Harrington, 562 U.S. at 101.

## III.

Under this deferential standard of review, we affirm the order denying Taylor's petition.

_____