NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 11 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EARL LEE DIXIE, | No. 11-57185 |
| Petitioner-Appellant, | D.C. No. 5:10-cv-01026-R-PLA |
| v. | |
| K. HARRINGTON, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and submitted February 14, 2019
Pasadena, California

Before: FISHER and CALLAHAN, Circuit Judges, and KORMAN,[**] District Judge.

After learning of his niece's death, petitioner Earl Dixie abused several illicit substances, including PCP, alcohol, and marijuana. Despite ingesting these substances, Dixie chose to drive a motor vehicle. When police officers observed expired vehicle registration tags and approached his car, a high-speed chase

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]  The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

1

ensued. Reaching 100 miles per hour, Dixie crashed through fences, struck palm trees, ran red lights, drove on the wrong side of the road, and almost hit bicyclists in the bicycle lane before coming to a halt. Dixie was convicted at trial of felony evasion of police and several misdemeanors. Because of previous convictions, he was sentenced under California's "three strikes" law to 25 years to life. After unsuccessfully challenging his conviction in California, he filed a petition for a writ of habeas corpus in the district court, from the denial of which he now appeals.

1. Dixie argues that his trial counsel's failure to investigate and present a defense based on schizophrenia prejudiced his defense because evidence of his schizophrenia would have strengthened his argument that intoxication prevented him from forming specific intent to evade police and would have created a reasonable probability of an acquittal. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). We are not persuaded.

Dixie concedes that a mental health expert's explanation to the jury that people with schizophrenia are "prone to delusions and blackouts, particularly in combination with the use of alcohol and illegal drugs," would not establish a lack of specific intent to evade. Regardless, the evidence at trial of specific intent to evade was substantial and compelling. It showed that, after taking PCP and other illicit substances, Dixie was able to drive to a specific location to look for his

wife's sister, communicate with two women and give one of them a hit of his "sherm" (a PCP-dipped cigarette), ditch the "sherm" and bottle of PCP just as the police arrived, flee the scene in his car as the police approached, commence a high-speed chase only once the police had exited their vehicle and were on foot, turn off his headlights to make him less visible during the chase, identify himself and his medical issues to emergency medical personnel immediately after the chase, and more.

This series of deliberate actions is entirely consistent with an individual acting with specific intent to evade. Given the strong evidence of specific intent to evade, "there is no reasonable possibility of a different outcome." *Hernandez v. Chappell*, 913 F.3d 871, 883 (9th Cir. 2019). Under these circumstances, the state court's rejection of Dixie's argument was not an unreasonable application of clearly established federal law. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential' . . ., and when the two apply in tandem, review is 'doubly' so . . . .") (citations omitted).

2. The California Court of Appeal's ruling that Dixie's sentence of 25 years to life was not "grossly disproportionate" was not an unreasonable application of clearly established federal law. In determining whether a sentence is "grossly disproportionate," factors to be weighed are (i) the seriousness of the current

3

offense and harshness of the penalty, (ii) other criminals' sentences in the same jurisdiction, and (iii) the same crime's sentences in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290-91 (1983). While these factors continue to guide the analysis of whether a sentence is "grossly disproportionate," *Harmelin v. Michigan*, 501 U.S. 957 (1991), has since made it clear that courts need not perform intra-jurisdictional and inter-jurisdictional analyses absent an inference of gross disproportionality. *See Graham v. Florida*, 560 U.S. 48, 60 (2010) (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring)). Dixie's triggering offense of evading the police consisted of dangerous felony conduct that endangered human life. His criminal history is both violent and extensive. Thus, there is no threshold inference of gross disproportionality, making it unnecessary to compare Dixie's sentence to compare comparable sentences imposed for comparable crimes in the same or other jurisdictions. *See id.; see also Ewing v. California*, 538 U.S. 11, 28-29 (2003) ("In weighing the gravity of [the defendant's] offense, we must place on the scales not only his current felony, but also his long history of felony recidivism."). Under these circumstances, the California Court of Appeal's rejection of his Eighth Amendment challenge was not unreasonable. *See Ewing*, 538 U.S. at 28-29. Indeed, the Supreme Court has held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of

4

which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring)). This is not such a case.

**AFFIRMED.**