**Jimmie DAVIS, Petitioner–Appellant,**

v.

**Frankie Sue DEL PAPA; John Ignacio Respondents–Appellees.**

No. 02–17090.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 15, 2003.

Decided Jan. 7, 2004.

Paul Turner, Esq., Danice P. Johnson, FPDNV–Federal Public Defender's Office, Las Vegas, NV, for Petitioner–Appellant.

Robert E. Wieland, DAG, AGNV–Office of the Nevada Attorney General, Carson City, NV, Rene L. Hulse, AGNV–Office of the Nevada Attorney General, Las Vegas, NV, for Respondents–Appellees.

Before: HALL, O'SCANNLAIN, Circuit Judges, and BEISTLINE,\* District Judge.

MEMORANDUM \*\*

Nevada state prisoner Jimmie Davis ("Davis") appeals the district court's order denying his 28 U.S.C. § 2254 petition for writ of habeas corpus—challenging his 1988 guilty plea conviction and life sentence without parole for first degree murder. More specifically, Davis contends the district court erred in ruling that his plea of guilty to first degree felony murder was

knowing and voluntary. Davis also contends that the district court erred in dismissing his claim that defense counsel was ineffective for failing to: (1) advise him of his right to perfect an appeal on his behalf; (2) file pre-trial motions on his behalf—prior to the entry of his guilty plea; and (3) conduct an independent investigation and/or prepare a meaningful defense.

The district court's decision to grant or deny a 28 U.S.C. § 2254 habeas petition is reviewed de novo. *See Killian v. Poole*, 282 F.3d 1204, 1207 (9th Cir.2002).

I

We reject Davis' contention that his confession was not knowing and voluntary due to Davis' alleged lack of knowledge about the elements of felony murder. As described below, however, his plea was constitutionally defective for having been entered on the advise of counsel who failed to conduct a meaningful investigation. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

II

The Court turns now to Davis's ineffective assistance of counsel claim and concludes that, although points 1 and 2 above are without merit,[1] defense counsel failed to conduct a reasonable investigation on Davis's behalf before advising him to enter a guilty plea and accept a sentence of life

---

\* The Honorable Ralph R. Beistline, United States District Judge for the District of Alaska, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The district court's procedural bar, with respect to the ineffective assistance of counsel on the state appeal, could have been raised before the state court and was not. Therefore, the Court finds the procedural bar was consistently applied within the meaning of

*Valerio;* whereby, there was no cause or prejudice. *Valerio v. Crawford*, 306 F.3d 742, 776–77 (9th Cir.2002).

Davis's ineffective assistance claim, based upon *defense counsel's* alleged failure to move to suppress certain police statements, also rings hollow. The facts reveal there was no basis upon which such suppression would prevail—in accordance with Nevada law. Indeed, it is clear to this Court that a 16–year–old charged with murder can be, and frequently is, treated as an adult.

without parole. We therefore reverse the district court's dismissal of Davis's claim that he was denied his Sixth Amendment right to effective assistance of counsel.

Because this issue is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, Davis's petition may be granted if, and only if, the state court's decision denying relief to Davis was contrary to, or involved an unreasonable application of clearly established federal law. *See Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1172–73, 155 L.Ed.2d 144 (2003).

Under clearly established federal law, a prisoner is entitled to reversal of a conviction if he or she can demonstrate: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) that he or she was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### A. Objective Standard of Reasonableness.

■ "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances...." *Id.* at 691. Thus, Davis must satisfy the first prong of *Strickland* by demonstrating that defense counsel "unreasonably" failed to investigate mitigating factors, and/or other sentencing considerations, before recommending that he stipulate to a sentence of life with no possibility of parole.

At the time of the plea agreement, counsel for Davis was well aware of the fact that: (1) Davis was African–American; and (2) that the victim of his crime was a Caucasian woman. Defense counsel was also aware that Davis's statement to the police could support a charge of first degree felony murder. Based on these limited facts, defense counsel recommended Davis stipulate to a sentence of life with no possibility of parole because, as a black defendant accused of killing a white victim, he would likely receive the death penalty.

There is no evidence in the record that defense counsel conducted *any* investigation into other relevant sentencing considerations. For example, there is no indication that defense counsel was aware of the fact that Davis had no prior adult record. Similarly, there is no indication that defense counsel did any investigation into the background of the victim—except to note her gender and race. Moreover, defense counsel did not interview any of the witnesses to the crime. And, perhaps most egregiously, it appears from the record that defense counsel may not have been aware that Davis was only 16 years old at the time of the offense.

The Government's only argument, proffered for the proposition that the scope of defense counsel's investigation was reasonable, is its repeated assertion that there was no need for defense counsel to interview witnesses because the police report contained "ample" evidence of the accidental nature of the incident, and an accident can support a charge of felony murder.[2]

---

**2.** The Government also argues that Davis may become eligible for an appearance before the Nevada Board of Pardons in 20 years. However, the reality of such relief is less than likely. Indeed, the Nevada Board of Pardons Commissioners is comprised of the Governor, the Attorney General, and the members of the Nevada Supreme Court. *See* 1997 Nev. Stat. 3236, 3244. Moreover,

> The Pardons Board receives hundreds of applications for sentence commutation and only a few of those applications [are] accepted for review and/or consideration. Reasons why most applications are rejected

This evidence, however, establishes only that Davis would likely be convicted of felony murder. While the police report may have provided defense counsel with enough information to classify Davis's offense, the Court concludes the police report did not contain enough information to assess the likelihood that Davis would receive a death sentence. Nonetheless, defense counsel hastily concluded, after reviewing the police report and meeting with Davis for less than two hours, that a death sentence was the most likely possibility.

Remarkably, it appears as though defense counsel undertook *no investigation at all* into Davis' background, the victim's background, or the credibility of witnesses who could paint Davis in a sympathetic light.[3] Had defense counsel undertaken an adequate investigation (or any investigation at all) into Davis's age, background, and other mitigating factors, it seems inconceivable that defense counsel would have advised Davis to accept a sentence of life without the possibility of parole. Likewise, it is extremely unlikely that a Neva-da jury would have imposed the death penalty if the shooting were accidental and given that the victim was a drug addict killed while attempting to sell a stolen gun to Davis. Most significantly, it is extremely uncommon for 16–year–olds to receive the death penalty.[4] Indeed, a survey taken during the seven years preceding Davis's plea bargain revealed that only 15 persons under the age of 17 were sentenced to death in the United States during that time period.[5] None of these sentences were imposed in Nevada, and many were later reversed on appeal or commuted. In fact, in the year immediately preceding Davis's plea bargain, only two persons younger than 18 years of age were sentenced to death throughout the United States, both of whom were 17.[6]

In order to satisfy the first prong of *Strickland,* Davis bears the burden of demonstrating that, in light of all the circumstances, the identified acts or omissions were "outside the wide range of professionally competent assistance." *Id.* at 690. Davis has met this burden. Defense

---

include the lack of extraordinary circumstances or that other information justifies denial including disciplinary history, management issues, inmate is parole eligible or discharges soon, an appeal is pending, other post conviction relief in progress or other factors.
*Application for Commutation of Sentence* at 1, available at http://www.doc.nv.gov/news/docs/id85_inmateapplicationinitial_final.pdf. Thus, the Court concludes there is little realistic likelihood of Davis receiving a pardon.

3. One of the witnesses gave the following account of the incident:
[The gun] just went off.... [H]e said "oh, I'm sorry." He said that to her.... I don't think he had the heart to shoot her and to me he just didn't know how to handle a gun.... I think it was an accident. Because when he said 'I'm sorry' to her it looked like his heart dropped.

*Appellant's Excerpts of Record* at 658–59.

4. Many death penalty states have outright prohibitions against executions for crimes committed before the perpetrator turned 18. Although at the time of the offense Nevada had no such prohibition, the state has since banned the execution of minors.

5. *Stanford v. Kentucky,* 492 U.S. 361, 373, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989) (*citing* Streib, *Imposition of Death Sentences for Juvenile Offenses,* January 1, 1982, Through April 1, 1989, p. 2 (paper for Cleveland–Marshall College of Law, April 5, 1989)).

6. *Id.* at 387 (Brennan, J., dissenting) (*citing Brief for the Office of the Capital Collateral Representative for the State of Florida, as Amicus Curiae in Support of Petitioner* (1988 WL 1026340)).

counsel's failure to undertake any investigation at all into mitigating factors before recommending that Davis stipulate to a sentence of life with no possibility of parole cannot be explained as a tactical decision. Consequently, the Court concludes the state's determination to the contrary was an objectively unreasonable application of *Strickland.*

### B. *Prejudice.*

In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

■ As previously discussed, there is almost no possibility that a jury would have imposed a death sentence in view of Davis's age and background, the accidental nature of the crime, and the background of the victim. For these reasons, it is unlikely that defense counsel would have advised Davis to accept a sentence of life with no possibility of parole if he had undertaken even a cursory investigation into potentially mitigating factors. Thus, the Court concludes, but for defense counsel's failure to investigate, Davis may have been able to negotiate a more favorable plea agreement. At a minimum, Davis would have had the opportunity to present his case, including all relevant mitigating evidence, to a jury. Accordingly, the Court further concludes Davis has met his burden of demonstrating a "reasonable probability" that, but for defense counsel's unprofessional errors, the result of the proceedings would have been more favorable to him.

### III

For the foregoing reasons, we **REVERSE** the district court and **REMAND** for further proceedings.