*86 Chief Justice Roberts,
concurring in the judgment.
I agree with the Court that Terrance Graham’s sentence of life without parole violates the Eighth Amendment's prohibition on “cruel and unusual punishments.” Unlike the majority, however, I see no need to invent a new constitutional rule of dubious provenance in reaching that conclusion. Instead, my analysis is based on an application of this Court’s precedents, in particular (1) our cases requiring “narrow proportionality” review of noncapital sentences and (2) our conclusion in Roper v. Simmons, 543 U. S. 551 (2005), that juvenile offenders are generally less culpable than adults who commit the same crimes.
These cases expressly allow courts addressing allegations that a noncapital sentence violates the Eighth Amendment to consider the particular defendant and particular crime at issue. The standards for relief under these precedents are rigorous, and should be. But here Graham’s juvenile status — together with the nature of his criminal conduct and the extraordinarily severe punishment imposed — lead me to conclude that his sentence of life without parole is unconstitutional.
I
Our Court has struggled with whether and how to apply the Cruel and Unusual Punishments Clause to sentences for noncapital crimes. Some of my colleagues have raised serious and thoughtful questions about whether, as an original matter, the Constitution was understood to require any degree of proportionality between noncapital offenses and their corresponding punishments. See, e. g., Harmelin v. Michigan, 501 U. S. 957, 962-994 (1991) (principal opinion of Scalia, J.); post, at 99-100, and n. 1 (Thomas, J., dissenting). Neither party here asks us to reexamine our precedents requiring such proportionality, however, and so I approach this case by trying to apply our past decisions to the facts at hand.
*87 A
Graham’s case arises at the intersection of two lines of Eighth Amendment precedent. The first consists of decisions holding that the Cruel and Unusual Punishments Clause embraces a “narrow proportionality principle” that we apply, on a case-by-case basis, when asked to review non-capital sentences. Lockyer v. Andrade, 538 U. S. 63, 72 (2003) (internal quotation marks omitted); Solem v. Helm, 463 U. S. 277, 290 (1983); Ewing v. California, 538 U. S. 11, 20 (2003) (plurality opinion); Harmelin, supra, at 996-997 (Kennedy, J., concurring in part and concurring in judgment). This “narrow proportionality principle” does not grant judges blanket authority to second-guess decisions made by legislatures or sentencing courts. On the contrary, a reviewing court will only “rarely” need “to engage in extended analysis to determine that a sentence is not constitutionally disproportionate,” Solem, supra, at 290, n. 16 (emphasis added), and “successful challenges” to noncapital sentences will be all the more “exceedingly rare,” Rummel v. Estelle, 445 U. S. 263, 272 (1980).
We have “not established a clear or consistent path for courts to follow” in applying the highly deferential “narrow proportionality” analysis. Lockyer, supra, at 72. We have, however, emphasized the primacy of the legislature in setting sentences, the variety of legitimate penological schemes, the state-by-state diversity protected by our federal system, and the requirement that review be guided by objective, rather than subjective, factors. Ewing, supra, at 23 (plurality opinion); Harmelin, supra, at 998-1001 (opinion of Kennedy, J.). Most importantly, however, we have explained that the Eighth Amendment “ ‘does not require strict proportionality between crime and sentence’ ”; rather, “ ‘it forbids only extreme sentences that are “grossly disproportionate” to the crime.’ ” Ewing, supra, at 23 (plurality opinion) (quoting Harmelin, supra, at 1001 (opinion of Kennedy, J.)).
*88 Our cases indicate that courts conducting “narrow proportionality” review should begin with a threshold inquiry that compares “the gravity of the offense and the harshness of the penalty.” Solem, 463 U. S., at 290-291. This analysis can consider a particular offender’s mental state and motive in committing the crime, the actual harm caused to his victim or to society by his conduct, and any prior criminal history. Id., at 292-294, 296-297, and n. 22 (considering motive, past criminal conduct, alcoholism, and propensity for violence of the particular defendant); see also Ewing, swpra, at 28-30 (plurality opinion) (examining defendant’s criminal history); Harmelin, 501 U. S., at 1001-1004 (opinion of Kennedy, J.) (noting specific details of the particular crime of conviction).
Only in “the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality,” id., at 1005, should courts proceed to an “intrajurisdictional” comparison of the sentence at issue with those imposed on other criminals in the same jurisdiction, and an “interjurisdictional” comparison with sentences imposed for the same crime in other jurisdictions, Solem, supra, at 291-292. If these subsequent comparisons confirm the inference of gross disproportion-ality, courts should invalidate the sentence as a violation of the Eighth Amendment.
B
The second line of precedent relevant to assessing Graham’s sentence consists of our cases acknowledging that juvenile offenders are generally — though not necessarily in every case — less morally culpable than adults who commit the same crimes. This insight animated our decision in Thompson v. Oklahoma, 487 U. S. 815 (1988), in which we invalidated a capital sentence imposed on a juvenile who had committed his crime under the age of 16. More recently, in Roper, 543 U. S. 551, we extended the prohibition on executions to those who committed their crimes before the age of 18.
*89 Both Thompson and Roper arose in the unique context of the death penalty, a punishment that our Court has recognized “must be limited to those offenders who commit ‘a narrow category of the most serious crimes’ and whose extreme culpability makes them ‘the most deserving of execution.’” 543 U. S., at 568 (quoting Atkins v. Virginia, 536 U. S. 304, 319 (2002)). Roper’s prohibition on the juvenile death penalty followed from our conclusion that “[t]hree general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders.” 543 U. S., at 569. These differences are a lack of maturity and an underdeveloped sense of responsibility, a heightened susceptibility to negative influences and outside pressures, and the fact that the character of a juvenile is “more transitory” and “less fixed” than that of an adult. Id., at 569-570. Together, these factors establish the “diminished culpability of juveniles,” id., at 571, and “render suspect any conclusion” that juveniles are among “the worst offenders” for whom the death penalty is reserved, id., at 570.
Today, the Court views Roper as providing the basis for a new categorical rule that juveniles may never receive a sentence of life without parole for nonhomicide crimes. I disagree. In Roper, the Court tailored its analysis of juvenile characteristics to the specific question whether juvenile offenders could constitutionally be subject to capital punishment. Our answer that they could not be sentenced to death was based on the explicit conclusion that they “cannot with reliability be classified among the worst offenders.” Id., at 569 (emphasis added).
This conclusion does not establish that juveniles can never be eligible for life without parole. A life sentence is of course far less severe than a death sentence, and we have never required that it be imposed only on the very worst offenders, as we have with capital punishment. Treating juvenile life sentences as analogous to capital punishment is at *90 odds with our longstanding view that “the death penalty is different from other punishments in kind rather than degree.” Solem, supra, at 294. It is also at odds with Roper itself, which drew the line at capital punishment by blessing juvenile sentences that are “less severe than death” despite involving “forfeiture of some of the most basic liberties.” 543 U. S., at 573-574. Indeed, Roper explicitly relied on the possible imposition of life without parole on some juvenile offenders. Id., at 572.
But the fact that Roper does not support a categorical rule barring life sentences for all juveniles does not mean that a criminal defendant’s age is irrelevant to those sentences. On the contrary, our cases establish that the “narrow proportionality” review applicable to noncapital cases itself takes the personal “culpability of the offender” into account in examining whether a given punishment is proportionate to the crime. Solem, supra, at 292. There is no reason why an offender’s juvenile status should be excluded from the analysis. Indeed, given Roper’s conclusion that juveniles are typically less blameworthy than adults, 543 U. S., at 571, an offender’s juvenile status can play a central role in the inquiry.
Justice Thomas disagrees with even our limited reliance on Roper on the ground that the present case does not involve capital punishment. Post, at 121 (dissenting opinion). That distinction is important — indeed, it underlies our rejection of the categorical rule declared by the Court. But Roper’s conclusion that juveniles are typically less culpable than adults has pertinence beyond capital cases, and rightly informs the ease-specific inquiry I believe to be appropriate here.
In short, our existing precedent already provides a sufficient framework for assessing the concerns outlined by the majority. Not every juvenile receiving a life sentence will prevail under this approach. Not every juvenile should. But all will receive the protection that the Eighth Amendment requires.
*91 II
Applying the “narrow proportionality” framework to the particular facts of this ease, I conclude that Graham’s sentence of life without parole violates the Eighth Amendment.*
A
I begin with the threshold inquiry comparing the gravity of Graham’s conduct to the harshness of his penalty. There is no question that the crime for which Graham received his life sentence — armed burglary of a nondomicile with an assault or battery — is “a serious crime deserving serious punishment.” Enmund v. Florida, 458 U. S. 782, 797 (1982). So too is the home invasion robbery that was the basis of Graham’s probation violation. But these crimes are certainly less serious than other crimes, such as murder or rape.
As for Graham’s degree of personal culpability, he committed the relevant offenses when he was a juvenile — a stage at which, Roper emphasized, one’s “culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity.” 543 U. S., at 571. Graham’s age places him in a significantly different category from the defendants in Rummél, Harmelin, and Ewing, all of whom committed their crimes as adults. Graham’s youth made *92 him relatively more likely to engage in reckless and dangerous criminal activity than an adult; it also likely enhanced his susceptibility to peer pressure. See, e. g., Roper, supra, at 569; Johnson v. Texas, 509 U. S. 350, 367 (1993); Eddings v. Oklahoma, 455 U. S. 104, 115-117 (1982). There is no reason to believe that Graham should be denied the general presumption of diminished culpability that Roper indicates should apply to juvenile offenders. If anything, Graham’s in-court statements — including his request for a second chance so that he could “do whatever it takes to get to the NFL” — underscore his immaturity. App. 380.
The fact that Graham committed the crimes that he did proves that he was dangerous and deserved to be punished. But it does not establish that he was particularly dangerous — at least relative to the murderers and rapists for whom the sentence of life without parole is typically reserved. On the contrary, his lack of prior criminal convictions, his youth and immaturity, and the difficult circumstances of his upbringing noted by the majority, ante, at 53, all suggest that he was markedly less culpable than a typical adult who commits the same offenses.
Despite these considerations, the trial court sentenced Graham to life in prison without the possibility of parole. This is the second-harshest sentence available under our precedents for any crime, and the most severe sanction available for a nonhomicide offense. See Kennedy v. Louisiana, 554 U. S. 407 (2008). Indeed, as the majority notes, Graham’s sentence far exceeded the punishment proposed by the Florida Department of Corrections (which suggested a sentence of four years, Brief for Petitioner 20), and the state prosecutors (who asked that he be sentenced to. 30 years in prison for the armed burglary, App. 388). No one in Graham’s case other than the sentencing judge appears to have believed that Graham deserved to go to prison for life.
Based on the foregoing circumstances, I conclude that there is a strong inference that Graham’s sentence of life *93 imprisonment without parole was grossly disproportionate in violation of the Eighth Amendment. I therefore proceed to the next steps of the proportionality analysis.
B
Both intrajurisdictional and interjurisdietional comparisons of Graham’s sentence confirm the threshold inference of disproportionality.
Graham’s sentence was far more severe than that imposed for similar violations of Florida law, even without taking juvenile status into account. For example, individuals who commit burglary or robbery offenses in Florida receive average sentences of less than 5 years and less than 10 years, respectively. Florida Dept, of Corrections, Annual Report FY 2007-2008: The Guidebook to Corrections in Florida 35. Unsurprisingly, Florida’s juvenile criminals receive similarly low sentences — typically less than five years for burglary and less than seven years for robbery. Id., at 36. Graham's life without parole sentence was far more severe than the average sentence imposed on those convicted of murder or manslaughter, who typically receive under 25 years in prison. Id., at 35. As the Court explained in Solem, 463 U. S., at 291, “[i]f more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive.”
Finally, the inference that Graham’s sentence is disproportionate is further validated by comparison to the sentences imposed in other domestic jurisdictions. As the majority opinion explains, Florida is an outlier in its willingness to impose sentences of life without parole on juveniles convicted of nonhomieide crimes. See ante, at 62-64.
Ill
So much for Graham. But what about Milagro Cunningham, a 17-year-old who beat and raped an 8-year-old girl before leaving her to die under 197 pounds of rock in a recy *94 cling bin in a remote landfill? See Musgrave, Cruel or Necessary? Life Terms for Youths Spur National Debate, Palm Beach Post, Oct. 15, 2009, p. 1A. Or Nathan Walker and Jakaris Taylor, the Florida juveniles who together with their friends gang-raped a woman and forced her to perform oral sex on her 12-year-old son? See 3 Sentenced to Life for Gang Rape of Mother, Associated Press, Oct. 14,2009. The fact that Graham cannot be sentenced to life without parole for his conduct says nothing whatever about these offenders, or others like them who commit nonhomicide crimes far more reprehensible than the conduct at issue here. The Court uses Graham’s case as a vehicle to proclaim a new constitutional rule — applicable well beyond the particular facts of Graham’s case — that a sentence of life without parole imposed on any juvenile for any nonhomicide offense is unconstitutional. This categorical conclusion is as unnecessary as it is unwise.
A holding this broad is unnecessary because the particular conduct and circumstances at issue in the case before us are not serious enough to justify Graham’s sentence. In reaching this conclusion, there is no need for the Court to decide whether that same sentence would be constitutional if imposed for other more heinous nonhomicide crimes.
A more restrained approach is especially appropriate in light of the Court’s apparent recognition that it is perfectly legitimate for a juvenile to receive a sentence of life without parole for committing murder. This means that there is nothing inherently unconstitutional about imposing sentences of life without parole on juvenile offenders; rather, the constitutionality of such sentences depends on the particular crimes for which they are imposed. But if the constitutionality of the sentence turns on the particular crime being punished, then the Court should limit its holding to the particular offenses that Graham committed here, and should decline to consider other hypothetical crimes not presented by this case.
*95 In any event, the Court’s categorical conclusion is also unwise. Most importantly, it ignores the fact that some nonhomicide crimes — like , the ones committed by Milagro Cunningham, Nathan Walker, and Jakaris Taylor — are especially heinous or grotesque, and thus may be deserving of more severe punishment.
Those under 18 years old may as a general matter have “diminished” culpability relative to adults who commit the same crimes, Roper, 543 U. S., at 571, but that does not mean that their culpability is always insufficient to justify a life sentence. See generally Thompson, 487 U. S., at 853 (O’Connor, J., concurring in judgment). It does not take a moral sense that is fully developed in every respect to know that beating and raping an 8-year-old girl and leaving her to die under 197 pounds of rocks is horribly wrong. The single fact of being 17 years old would not afford Cunningham protection against life without parole if the young girl had died — as Cunningham surely expected she would — so why should it do so when she miraculously survived his barbaric brutality?
The Court defends its categorical approach on the grounds that a “clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment.” Ante, at 74. It argues that a case-by-case approach to proportionality review is constitutionally insufficient because courts might not be able “with sufficient accuracy [to] distinguish the few incorrigible juvenile offenders from the many that have the capacity for change.” Ante, at 77.
The Court is of course correct that judges will never have perfect foresight — or perfect wisdom — in making sentencing decisions. But this is true when they sentence adults no less than when they sentence juveniles. It is also true when they sentence juveniles who commit murder no less than when they sentence juveniles who commit other crimes.
*96 Our system depends upon sentencing judges applying their reasoned judgment to each case that comes before them. As we explained in Solem, the whole enterprise of proportionality review is premised on the “justified” assumption that “courts are competent to judge the gravity of an offense, at least on a relative scale.” 463 U. S., at 292. Indeed, “courts traditionally have made these judgments” by applying “generally accepted criteria” to analyze “the harm caused or threatened to the victim or society, and the culpability of the offender.” Id., at 292, 294.
* * *
Terrance Graham committed serious offenses, for which he deserves serious punishment. But he was only 16 years old, and under our Court’s precedents, his youth is one factor, among others, that should be considered in deciding whether his punishment was unconstitutionally excessive. In my view, Graham’s age — together with the nature of his criminal activity and the unusual severity of his sentence — tips the constitutional balance. I thus concur in the Court’s judgment that Graham’s sentence of life without parole violated the Eighth Amendment.
I would not, however, reach the same conclusion in every case involving a juvenile offender. Some crimes are so heinous, and some juvenile offenders so highly culpable, that a sentence of life without parole may be entirely justified under the Constitution. As we have said, “successful challenges” to noncapital sentences under the Eighth Amendment have been — and, in my view, should continue to be — “exceedingly rare.” Rummel, 445 U. S., at 272. But Graham’s sentence presents the exceptional case that our precedents have recognized will come along. We should grant Graham the relief to which he is entitled under the Eighth Amendment. The Court errs, however, in using this case as a vehicle for unsettling our established jurisprudence and fashioning a categorical rule applicable to far different cases.

Justice Auto suggests that Graham has failed to preserve any challenge to his sentence based on the “narrow, as-applied proportionality principle.” Post, at 124 (dissenting opinion). I disagree. It is true that Graham asks us to declare, categorically, that no juvenile convicted of a nonhomicide offense may ever be subject to a sentence of life without parole. But he claims that this rule is warranted under the narrow proportionality principle we set forth in Solem v. Helm, 463 U. S. 277 (1983), Harmelin v. Michigan, 501 U. S. 957 (1991), and Ewing v. California, 538 U. S. 11 (2003). Brief for Petitioner 30, 31, 54-64. Insofar as he relies on that framework, I believe we may do so as well, even if our analysis results in a narrower holding than the categorical rule Graham seeks. See also Reply Brief for Petitioner 15, n. 8 (“[T]he Court could rule narrowly in this case and hold only that petitioner’s sentence of life without parole was unconstitutionally disproportionate”).