**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOVAN'Z SMITH,<br><br>              Petitioner - Appellant,<br><br>  v.<br><br>KEN CLARK, Warden,<br><br>              Respondent - Appellee. | No. 14-15162<br><br>D.C. No. 2:11-cv-03312-MCE-GGH<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted March 11, 2015
San Francisco, California

Before: CALLAHAN, M. SMITH, and WATFORD, Circuit Judges.

California state prisoner Jovan'z Smith (Smith) appeals the district court's

denial of his habeas corpus petition challenging his conviction for assault on a

child causing death. Smith contends that the California trial court violated his

constitutional rights by admitting his confession into evidence even though it was

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

obtained during a lengthy, station-house interrogation during which he was not timely advised of his *Miranda* rights. The district court found this to be a close case, but denied Smith's petition and granted a certificate of appealability. Reviewing the district court's denial of habeas relief de novo, and bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we affirm.

1.       AEDPA authorizes the grant of a state prisoner's petition for a writ of habeas corpus when the relevant state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under AEDPA, the Court must "look to the last reasoned state court adjudication on the merits of [Smith's] *Miranda* claim[s], which was the decision of the California Court of Appeal . . . ." *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013).

The parties, the state appellate court, and the district court identify the pivotal issue in this case to be whether Smith was "in custody" when he first made incriminating statements to the police. *See United States v. Kim,* 292 F.3d 969, 973 (9th Cir. 2002) ("An officer's obligation to give a suspect *Miranda* warnings before interrogation extends only to those instances where the individual is 'in

2

custody.'" (internal citation omitted)). In determining whether a suspect was in custody, "[t]wo discrete inquiries are essential . . . ." *Thompson v. Keohane,* 516 U.S. 99, 112 (1995). First, a court must determine "what [objective] circumstances surround[ed] the interrogation . . . ." *Id.*[1] Second, a court must decide whether "a reasonable person [in those objective circumstances would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.*; *see also Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012) (setting forth a non-exhaustive list of factors that are pertinent to the determination whether a reasonable person would have believed he could freely walk away from the interrogators); *Kim,* 292 F.3d at 974 (same).

    2.    Applying the custody test here, we find that a fairminded jurist could conclude, as did the three judges on the state appellate court, that a reasonable person in Smith's circumstances would have believed that he or she was free to go. It is true that a number of circumstances weigh in favor of the view that the interrogation became custodial before Smith first confessed. Such circumstances include, but are not limited to, how Smith was summoned and brought from school

---

[1]    The circumstances surrounding Smith's interrogation are detailed in the magistrate judge's report and recommendation. While not repeated here, the panel's decision is based on the totality of circumstances, including as shown by the video footage of the interrogation.

3

to the police station, aspects of the interview's physical surroundings, the confiscation of Smith's property, the tag-team interrogation tactics employed, the detectives' at times accusatory tone, the duration of the interview, some statements made by the officers and the child's grandmother during the interview, and the fact that Smith was not released at the end of the questioning.

But numerous other circumstances support the view that the interrogation could fairly be deemed investigative rather than custodial. Smith was never handcuffed, the door to the interview room was unlocked and was sometimes left open, the detectives were dressed in plain clothes, the detectives were courteous and relaxed for most of the interview, Smith was given some breaks from questioning, and Smith signed forms consenting to a lie detector test and retrieval of items from his room. Most significantly, as the state appellate court emphasized, the police advised Smith that he was not under arrest three times and that he was free to leave twice. The Supreme Court and this Court have consistently recognized that such advisements weigh strongly in favor of the view that an interviewee was not in custody. *California v. Beheler*, 463 U.S. 1121, 1122 (1983) (per curiam); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam); *United States v. Crawford*, 372 F.3d 1048, 1059-60 (9th Cir. 2004) (en banc).

4

While the state appellate court incorrectly stated that Smith was "told three times that he was not under arrest and that he was free to go," the misstatement appears to have been inadvertent and not to have affected its analysis. In fact, the state appellate court directly confronted the third advisement's ambiguity, and thus must have known that Smith was told that he was "not under arrest," not that he was "free to go." The reasonableness of the state appellate court's view that the third advisement's ambiguity did not render the interrogation custodial is reinforced by statements that Detective Pucci made at the conclusion of the lie detector test. Detective Pucci shook Smith's hand and stated, "[i]f I don't get a chance to see you again, good luck to you, and I hope everything works out for you." He then handed Smith his card and said "[y]ou got any questions, concerns about anything, that's my desk number there." A reasonable person in Smith's circumstances would view this interaction as an indication that he or she remained free to leave.

It is concerning that the state appellate court did not address Detective Pucci's comment that Smith could not "leave the room lying bro." As this Court has noted, "[a] decision on which turns whether a teenager will spend the rest of his days behind bars merits closer judicial attention from the state courts." *Taylor v. Maddox*, 366 F.3d 992, 1007 (9th Cir. 2004). But, viewed in context, the

5

statement "[y]ou can't leave this room lying bro" could be viewed as an appeal to the importance of truth rather than interpreted as a literal statement about whether Smith was free to leave.

Looking to the totality of circumstances, we conclude that the state appellate court's decision that Smith was not in custody when he first confessed was not objectively unreasonable. Accordingly, we must deny habeas relief. As the Supreme Court has held on multiple occasions, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (reversing the Ninth Circuit for "fail[ing] to give proper deference to state courts by conflating error (even clear error) with unreasonableness"). Indeed, state courts are given even "more leeway" in cases like this one, where the rule applied is general in nature, requiring a case-by-case assessment based on the totality of circumstances. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

3.    The state appellate court's failure to identify Smith's youth as a relevant factor in the custody test does not render its decision contrary to clearly established Supreme Court precedent.[2] It was not until the Supreme Court decided *J.D.B. v. North Carolina*, 131 S. Ct. 2394 (2011), on June 16, 2011, several

---

[2]    Smith was sixteen years old at the time of the interrogation.

months after Smith's appeal became final, that the Supreme Court squarely held that a suspect's age properly informs the *Miranda* custody analysis. *J.D.B.* was thus not clearly established law at the time of the state appellate court's decision and may not provide a basis for granting habeas relief.

4. The district court also certified the following issue: "Whether the police may use the 'you're not under arrest' strategy to avoid reading petitioner his rights while, in the meantime, resorting to coercive strategies condemned by *Miranda* to extract a confession." On appeal, Smith frames this issue as whether the state trial court should have suppressed Smith's confession because it was obtained during a deliberate two-step interrogation in violation of the rule set forth in *Missouri v. Seibert*, 542 U.S. 600 (2004) (plurality opinion). Smith's argument fails because *Seibert* does not apply where, as here, the suspect was not in custody during the first stage of the interrogation. *See United States v. Barnes*, 713 F.3d 1200, 1205–06 (9th Cir. 2013) (per curiam). We note that the Supreme Court has not categorically prohibited the deliberate use of the "'you're not under arrest' strategy." Rather, the Supreme Court endorsed this strategy in *Mathiason*, 429 U.S. at 495, and *Beheler*, 463 U.S. at 1122. This is not to say that an interrogation begun with a so-called "*Beheler* advisement" cannot become custodial as that interrogation drags on and coercive circumstances accumulate. But, on the facts

7

presented, the state appellate court did not unreasonably conclude that the custodial rubicon had not been crossed by the time Smith first confessed, and thus the prophylactic procedural measures adopted by the Supreme Court in *Miranda* had not been triggered.

For these reasons, the district court's denial of habeas relief is **AFFIRMED**.

*Smith v. Clark*, No. 14-15162

WATFORD, Circuit Judge, concurring:

I agree with my colleagues that we are forced to affirm, given the deferential standard of review imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d)(1). I offer a few additional thoughts to explain why I find that outcome troubling. If this case is any indication, California courts are giving virtually dispositive weight to the fact that a suspect has been told he is not under arrest, even when all other circumstances suggest that the suspect is "in custody" for *Miranda* purposes.

The Supreme Court devised the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), to protect the Fifth Amendment privilege against self-incrimination. The Court believed that "incommunicado interrogation of individuals in a police-dominated atmosphere" generates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 445, 467. The Court concluded that the warnings it prescribed were needed "to combat these pressures and to permit a full opportunity to exercise the privilege against self-incrimination." *Id.* at 467. The Court has pegged the trigger for *Miranda* warnings to the concept of "custody," defined to mean either formal arrest or circumstances in which the suspect has otherwise been "deprived of his freedom of action in any

significant way." *Id.* at 444; *see Berkemer v. McCarty*, 468 U.S. 420, 428–31, 434 (1984).

The police subjected the petitioner in this case, Jovon'z Smith, to incommunicado interrogation in a police-dominated atmosphere—namely, a small, windowless room in the bowels of the police station, without his parents or any other family members present. Interrogating a suspect in that setting, the Court recognized in *Miranda*, gives the police a significant psychological advantage in overcoming a suspect's desire to remain silent. Why? Mainly because the suspect is alone, cut off from the rest of the world, in surroundings that are intimidating and unfamiliar. The Court put it this way in *Miranda*, quoting from a police training textbook:

> "If at all practicable, the interrogation should take place in the investigator's office or at least in a room of his own choice. The subject should be deprived of every psychological advantage. In his own home he may be confident, indignant, or recalcitrant. He is more keenly aware of his rights and more reluctant to tell of his indiscretions or criminal behavior within the walls of his home. Moreover, his family and other friends are nearby, their presence lending moral support. In his own office, the investigator possesses all the advantages. The atmosphere suggests the invincibility of the forces of the law."

*Id.* at 449–50 (quoting Charles E. O'Hara & Gregory L. O'Hara, Fundamentals of

Criminal Investigation 99 (1956)).

The police could nevertheless interrogate Smith without providing *Miranda* warnings so long as he wasn't "in custody"—in other words, so long as a reasonable person in Smith's shoes would have felt "at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Applying this test, the California courts held that Smith was never in custody, relying primarily on the fact that officers told Smith he wasn't under arrest on three occasions. But all the other circumstances surrounding Smith's interrogation suggest that he wasn't free to leave whenever he wanted, notwithstanding the admonitions he had been given.

First, officers constrained Smith's ability to leave by confiscating his property. About an hour into the interrogation, the police took Smith's cell phone and did not return it. (They had earlier taken his backpack.) The signal sent by that action seems obvious to me. When the police confiscate a valuable piece of your personal property (in today's world that certainly describes one's cell phone), everyone understands that, as a practical matter, you're not likely to leave without it. *See Florida v. Royer*, 460 U.S. 491, 504 n.9 (1983) (plurality opinion); *id.* at 512 (Brennan, J., concurring in the judgment). So, despite assurances that he was not under arrest, the reality is that Smith's freedom to terminate the encounter was

dependent almost from the outset upon the officers' willingness to return his property.

Second, the officers' responses to Smith's questions strongly suggested that he would not be permitted to leave until the officers had finished questioning him. About an hour and a half into the interrogation, Smith informed Detective Fong that he had basketball practice at 4:00 p.m., although by then it was already a little after 4:00. In response, Detective Fong didn't tell Smith that he was running late and had better leave right away. She instead instructed him to "hang tight" and said she would let the officer leading the interrogation (Detective Mustard) know about Smith's prior commitment.

Later, roughly two and a half hours into the interrogation, Smith agreed to take a lie detector test and asked the officer administering the test, "After this, will I be able to go home?" The officer didn't respond with the only answer consistent with Smith's supposed freedom to leave, which would have been "yes, of course." Instead, he told Smith, "Hey, you know, I don't know. Are you and Detective Mustard done talking?" That response seems pretty clearly to indicate that Smith *wasn't* free to leave whenever he chose but rather only when Detective Mustard had finished interrogating him. That the officer hastily added, "You understand you're not under arrest, okay?" doesn't seem to change anything. A reasonable

person who asks whether he can go home and is told that the answer depends on whether the police are done questioning him probably won't feel "at liberty to terminate the interrogation and leave." *Thompson*, 516 U.S. at 112.

Finally, even if Smith should have understood up until this point that he was free to leave (notwithstanding the decidedly mixed signals he had been sent), what happened next surely had to affect Smith's thinking. After Smith completed the lie detector test, the officer administering the test left the room and then returned a short time later with Detective Mustard. The officers told Smith he had failed the test. Is it really reasonable to think that Smith could have said at that point, "Thank you very much, I'll be leaving now"? I find it hard to imagine any reasonable person, much less a reasonable 16-year-old, feeling free to walk out of the police station in those circumstances.

From that point on, the officers used the results of the lie detector test to convey to Smith that they would not end their questioning until he told them what they wanted to hear. Smith repeatedly tried to explain that he hadn't done anything intentional to hurt the child, but the officers interrupted him each time and told him that they didn't believe him. Four hours into the interrogation, the two detectives made their position clear: "Jovon'z, it didn't happen like that," said one. "You can't leave this room lying, bro," added the other. As the majority notes, the state

courts never even addressed this last statement. Considered in context, I see no reason why a reasonable person in Smith's shoes wouldn't have interpreted that statement literally.

The only circumstance the state courts identified as suggesting Smith was *not* in custody is the fact that he had been advised three times he was not under arrest and once that he could leave at any time. The state courts placed essentially dispositive weight on those advisements in evaluating the totality of the circumstances, even though each of those advisements was undermined by subsequent events during the interrogation. The first time Smith was told he was not under arrest occurred at school, before Smith even arrived at the police station and thus before the interrogation even began. The second time occurred at the very outset of the interrogation, which was also the only time the officers told Smith he could leave at any time. And the third time Smith was told he was not under arrest occurred just before he took the lie detector test, as part of the highly equivocal response to Smith's asking whether he could go home afterward.

In giving all-but-dispositive weight to a "you're not under arrest" advisement, the California courts appear to be validating a practice adopted by at least some California police departments. Those departments interpret existing Supreme Court precedent, particularly *California v. Beheler*, 463 U.S. 1121 (1983)

(per curiam), to mean that so long as a suspect is told he's not under arrest, officers need not provide *Miranda* warnings, even if the circumstances surrounding the interrogation give rise to the same "inherently compelling pressures" to speak that the warnings were designed to combat. *See* Charles D. Weisselberg, *Mourning Miranda*, 96 Calif. L. Rev. 1519, 1542–45 (2008) (canvassing police training materials used in California). Using this tactic to skirt the requirements of *Miranda* is apparently common enough in some law enforcement circles that officers have coined a short-hand term for it. Shortly after the interrogation at issue in this case begins, Detective Mustard enters the room to take the lead in questioning Smith. Before doing so he turns to Detective Fong and asks, "You *Beheler*-ing here?"

Despite my misgivings about the correctness of the California courts' ruling in this case, I think we are compelled to affirm under AEDPA. On the one hand, the Supreme Court's decision in *Beheler* seems to hold that telling a suspect he's not under arrest is just one of many circumstances courts must evaluate when deciding whether someone is in custody, not a circumstance that's entitled to overriding weight. It's hard to square that reading of *Beheler* with the rule the California courts used to decide this case: "We think a reasonable person who is told that he is not under arrest would understand that he is not in custody." On the

other hand, however, the Supreme Court has never explicitly clarified how much weight a "you're not under arrest" advisement may be given, much less explicitly forbidden state courts to give such an advisement the heavy weight it received here. So I can't say, under existing Supreme Court precedent, that the California courts' decision represents an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). Until the Supreme Court says otherwise, California courts will remain free to validate the "*Beheler*-ing" of suspects, even when that practice is used to evade *Miranda*'s requirements.