Filed 8/27/25  P. v. Choice CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRIAN KEITH CHOICE,<br><br>    Defendant and Appellant. | B337091<br><br>(Los Angeles County<br>Super. Ct. No. KA040471) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Affirmed.

Milena N. Blake for Defendant and Appellant.

Rob Bonta, Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Brian Keith Choice (defendant) appeals the judgment of resentencing entered after the trial court recalled his sentence of 115 years to life in prison upon the recommendation of the California Department of Corrections and Rehabilitation (CDCR), and resentenced him. He contends the trial court erred by failing to make a meaningful reduction in his sentence and by failing to consider required statutory factors. He also contends the sentence was in violation of the Eighth Amendment to the United States Constitution. Finding no merit to defendant's contentions, we affirm the judgment.

## BACKGROUND

In 1999 a jury convicted defendant of three counts of second degree robbery (Pen. Code, § 211),[1] with findings he personally used a firearm during the commission of the crimes (§ 12022.53, subd. (b)). In a bifurcated proceeding, defendant admitted he had suffered three prior serious felony convictions within the meaning of the three strikes law (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)) (strike convictions), and two prior serious felony convictions within the meaning of section 667, subdivision (a)(1) (recidivist enhancements). He was sentenced to a term of 115 years to life in prison, comprised of a third-strike term of 25 years to life for each of the three robbery counts, plus a 10-year firearm enhancement for each robbery count, and two 5-year recidivist enhancements. The judgment was affirmed in *People v. Choice* (June 15, 2000, B131004) (nonpub. opn.). We have taken the procedural information from the opinion affirming the judgment.

---

[1]     All further unattributed code sections are to the Penal Code unless otherwise stated.

2

**Prior convictions**

The trial court received a letter dated December 21, 2022, from Kathleen Allison, then Secretary of the CDCR, recommending the trial court recall defendant's sentence and resentence him in accordance with section 1172.1, subdivision (a)(1).[2] Secretary Allison stated she and the Director of the Division of Adult Institutions thoroughly reviewed and compiled defendant's case factors in light of new sentencing authority. Attached to the letter was a cumulative case summary and evaluation report containing the case factors applicable to the recommendation for recall and resentencing.

The summary noted defendant's criminal history, which included convictions for robbery in 1986 and another in 1992, receiving stolen property in 1996, and four drug offenses between 1989 and 1992 and one in 1998. The summary showed poor performance on parole between 1997 and 1999, including three instances of absconding and conviction of the crimes for which he is incarcerated. There have been four reports of defendant's violation of rules since his incarceration: possession of a cell phone in 2020; possession of alcohol in 2019; delaying a peace officer in the performance of duties in 2004; and disobeying a direct order in 2002. He received one counseling report in 2004, after he refused to lock up when given an order.

In addition, the summary indicated between 2000 and 2011, defendant worked as a porter, mostly receiving satisfactory

---

[2] Section 1172.1, subdivision (a)(1) allows the superior court to recall and resentence a defendant at any time upon certain conditions, including the recommendation of the secretary of the CDCR.

grades for performance. From 2013 to the present, defendant worked as a cook, receiving grades for performance ranging from satisfactory, above average, exceptional and excellent, and becoming a cook journeyman. Since 2019, defendant has received numerous laudatory "chronos" from correctional supervising cooks and a culinary officer acknowledging his hard work, work ethic, and a willingness to complete assigned tasks.[3]

The prosecution submitted a brief supporting recall and resentencing, expressing the opinion defendant did not pose an undue risk to public safety. Defendant submitted a report by expert witness Retired Warden Robert Ayers and called Ayers to testify at the hearing as an expert on prison behavior and release evaluations.

Ayers did not find defendant's one-time alcohol possession to be significant, and the CDCR found no indication defendant has been required to submit to random urine testing. He explained inmates who use alcohol are usually caught, and defendant had just the one violation. Also, defendant's drug of choice had been crack cocaine, not alcohol, and although drugs are usually readily available in prisons, Ayers saw no signs that defendant had been using drugs while incarcerated. Ayers spoke with defendant, who acknowledged his criminality was based on his addiction. Defendant's crimes were of the type typical of addicts: theft to support their addiction.

While the job of cooking is an easy job to get, it is hard to keep, as many inmates are fired for stealing and smuggling food out. Defendant's work ethic demonstrated how he took his job

---

[3] A chrono is an evaluation. (*In re Gray* (2007) 151 Cal.App.4th 379, 389.)

4

seriously and was not involved in such activity.  Ayers saw a notation in defendant's file designating him as a "critical worker," a class of inmates with jobs deemed necessary for the basic functioning of the prison and trusted by staff to come out of their cells during lockdowns to do their jobs.

Among other things, Ayers summarized defendant's solid work performance and rehabilitative progress, his honesty and good behavior, and his years-long sobriety in prison.  Ayers gave his opinion that defendant would not be a risk to public safety and noted he had been accepted into an excellent reentry program.

In making a statement on his own behalf, defendant acknowledged his lack of formal rehabilitative programming relating to substance abuse, such as Alcoholics Anonymous (AA) and Narcotics Anonymous (NA), and said he took responsibility. He explained that he "really, really" liked his job, and in order to sign up and to have a record of programming, he would have been required to give up his job.  Instead he participated in AA and NA as a walk-in, attending when he could.  He would sit and listen and learned a lot about how to deal with sobriety.  He added the sessions of AA and NA helped him a lot, but it is just not on paper.

The prosecution recommended a reduced sentence of 25 years to life plus two years, as follows:  strike the strike allegations with regard to two of the robbery counts; impose 25 years to life as to the third robbery count and a one-year middle term for each of the two remaining robbery counts; strike the five-year recidivist enhancements previously imposed pursuant to section 667, subdivision (a); stay the 10-year gun enhancement previously imposed pursuant to section 12022.53, subdivision (b),

5

and strike any remaining enhancements. The prosecution explained defendant would be considered for early parole due to his age in 2026.[4]

Defendant asked to be resentenced to a term that would result in his immediate release into the Amity Foundation re-entry program and offered to waive custody credits so he could be placed on parole.

After the hearing of January 8, 2024, the trial court recalled defendant's sentence and resentenced him to a total prison term of 39 years to life. As to count 1, second degree robbery, the court struck the two recidivist enhancements but declined to strike the prior strike convictions and sentenced defendant to a term of 25 years to life in prison, plus 10 years for the firearm enhancement. As to each of counts 2 and 3, the court struck the prior strike convictions and the firearm enhancement for purposes of resentencing only and struck the five-year recidivist enhancements.[5] The court imposed the middle term of

---

[4] Defendant also understands he will be eligible for elderly parole consideration in 2026. Neither party discussed section 3055, which governs elderly parole, and states in subdivision (g): "This section does not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667 . . . ." When section 3055 was enacted in 2017, it contained this subdivision (g) exception to persons serving a sentence under the three strikes law. (See Stats. 2017, ch. 676, § 3 [eff. Jan. 1, 2018].) Section 3055 has been amended twice since then and subdivision (g) remains in the statute. (See Stats. 2020, ch. 334, § 2 & Stats. 2023, ch. 311, § 15.)

[5] The court struck the two strike convictions to comply with section 1172.1, subdivision (a)(2), which requires the court to apply "any changes in law that reduce sentences or provide for

---

three years as to count 2 and the middle term of one year as to count 3.  Custody credit was calculated at 9,417 days.

Defendant filed a timely notice of appeal from the judgment.

## DISCUSSION

### I.    Resentencing discretion

Defendant first contends the trial court erred by failing to provide a "meaningful modification" of defendant's sentence.  He points to section (1)(d) the uncodified statement of legislative intent in Assembly Bill No. 600 (2023–2024 Reg. Sess.) (Assembly Bill 600), which amended section 1172.1, effective January 1, 2024.  Section (1)(d) of Assembly Bill 600 states: "It is the intent of the Legislature that, in cases where the judge concludes that recall and resentencing pursuant to Section 1172.1 of the Penal Code is appropriate, the resentencing result in a meaningful modification. 'Meaningful modification' means it will cause some actual change in the person's circumstances, including, but not limited to, immediate release, earlier release, and newly acquired entitlement to review by the Board of Parole Hearings or the advancement of eligibility for a parole hearing."

Defendant contends his resentencing resulted in none of the above "meaningful" changes.  He reasons that although he will have been incarcerated for 25 continuous years in 2026 when he turns 60 and will be possibly eligible for elderly parole, his new sentence of 39 years to life effectively puts him in the same

---

judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."

position as his prior sentence of 115 years to life with no opportunity for parole until the year 2114.

The People point out that uncodified legislative findings are relevant only where the statute itself is ambiguous, and then only to the question of statutory interpretation. (*Doe v. Superior Court* (2023) 15 Cal.5th 40, 69.) Such statements "cannot be read to expand the scope of the legislation beyond which it was intended. Statements of intent, contained in the uncodified section of statutes, "'do not confer power, determine rights, or enlarge the scope of a measure.'"'" (*People v. Coddington* (2023) 96 Cal.App.5th 562, 570–571.)

In reply, defendant claims an ambiguity in the statute: that it is not clear whether the prior sentence may be reimposed without change, whether the trial court may impose a sentence that is "functionally" the same, or whether, as defendant asserts, there is a *presumption* favoring an "actual change in the person's circumstances," which is more favorable, including immediate release.

Defendant appears to find support for his presumption argument in section 1172.1, subdivision (b)(2), which states: "There shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." However, that provision does not apply to the determination of a new sentence. Although section 1172.1, subdivision (b)(2) created presumption favoring recall and resentencing when the CDCR secretary recommends it, once the trial court has recalled a sentence, as in this case, "the sentence ultimately imposed by the court is left to its discretion without any further application of

8

the presumption." (*People v. Braggs* (2022) 85 Cal.App.5th 809, 820.)

Section 1172.1 is unambiguous with regard to the court's discretion. "Under 'well-settled principle[s] of statutory construction,' we 'ordinarily' construe the word 'may' as permissive and the word 'shall' as mandatory, 'particularly' when a single statute uses both terms." (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542.) Section 1172.1, subdivision (a)(1) states in relevant part that under one of the enumerated conditions, "the court *may* . . . recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced." (Italics added.) Section 1172.1, subdivision (a)(3)(A) provides the resentencing court *may* "[r]educe [the] term of imprisonment by modifying the sentence," "provided the new sentence, if any, is no greater than the initial sentence" (*id.*, subd. (a)(1)); and section 1172.1, subdivision (a)(3)(B) provides the court *may* vacate the sentence and impose a lesser offense that results in a reduced sentence. Section 1172.1 also uses "shall." For example, section 1172.1, subdivision (a)(2) states in resentencing the defendant, the court "*shall* apply . . . any changes in law that reduce sentences or provide for judicial discretion"; and subdivision (a)(5) states in resentencing the defendant, "the court *shall* consider postconviction factors, including, but not limited to" the enumerated factors." (Italics added.) Thus we agree with the People that when "may" is used in the statute it is conferring discretion onto the resentencing court.

Even if we agree there is an ambiguity requiring resorting to the statute's preamble, other sections make clear the ultimate

9

sentence imposed after recall is left to the trial court's discretion. Assembly Bill 600, section (1)(a) sets forth the Legislature's intent that all ameliorative laws and court decisions allowing discretionary relief should be applied, and section (1)(b) states it is the Legislature's intent "courts have *full discretion* in resentencing proceedings . . . to reconsider past decisions to impose prior strikes." (Italics added.) The trial court here considered defendant's 11 prior strike convictions in resentencing defendant. As there is nothing in the text of section 1172.1 that obligates a court to impose a sentence less than the initial sentence, we reject defendant's contention the court was *required* to impose a term that would actually make a favorable "change in the person's circumstances." As the sentence imposed was well within the court's discretion, we disagree.

The burden is on the party attacking the sentence to demonstrate an abuse of discretion. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977 (*Alvarez*).) "Where, as here, a discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) The People argue defendant's burden is difficult to carry, as he has not claimed the court abused its discretion in dismissing just two of his three prior strikes. The People also claim that given defendant is serving a third strike sentence, he will be eligible for elderly parole in 2026.

## II. Consideration of postconviction factors

Defendant asserts the trial court abused its discretion by failing to adequately consider postconviction factors, and instead relied almost exclusively on his criminal history, in making findings contrary to the position of the CDCR and Ayers, the defense expert witness.

In deciding the sentence to impose in a new sentencing hearing, the court "shall" "consider postconviction factors, including, but not limited to," defendant's "disciplinary record and record of rehabilitation . . . while incarcerated," "evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence," and "evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(5).)

As defendant claims an abuse of discretion, he must "clearly show that the sentencing decision was irrational or arbitrary." (*Alvarez, supra*, 14 Cal.4th at pp. 977–978.) "It is a fundamental tenet of appellate review that we presume on a silent record the court properly exercised its discretion." (*People v. Frazier* (2020) 55 Cal.App.5th 858, 868.) Thus, "[a]bsent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390; see *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all of the relevant factors . . . ."].)

Prior to setting forth its reasons for the modified sentence, the trial court stated it had considered *all* the evidence. Nevertheless, defendant asserts the court "*seemingly* ignored the

11

letters of recommendation from prison" praising his "work ethic, maturity and responsibility; lack of disciplinary write-ups . . . ; lowest-possible security designation; age; professional reentry plan; and the risk assessment by CDCR." (Italics added.) Defendant also asserts "[t]he court *appears* to have ignored this significant vocational training and its rehabilitative effects, as well as his participation in programs such as Alcoholics Anonymous and Criminal Thinking . . . ." (Italics added.)

Defendant complains that "[i]nstead, the court simply stated that there had not been 'much change'" and that there had been "no efforts at rehabilitation." The trial court actually stated: "[A]lthough I would commend [defendant] for the work that he has done while in prison, the fact that there has been no drug rehabilitation and no efforts at rehabilitation through any of the programming over 24 years leads this court to believe that there is not much change necessarily." This statement shows the trial court did address and consider the factors defendant claims were ignored.

Other parts of the trial court's statement of reasons for its sentencing choices also show the court considered postconviction factors. Specifically, the court considered the report and testimony of defense expert Ayers, but after Ayers was cross-examined, the court seemingly gave less weight to this testimony.[6] The court also observed that while there was an

---

[6] For example, the court disagreed that having alcohol ("pruno") in prison says nothing about defendant's sobriety or Ayers's opinion that facts concerning defendant's prior crimes or the subject crimes had any relevance to defendant's potential future risk. The court concluded the only relevant facts Ayers

indication defendant had family support, the CDCR noted defendant had received only seven visits in the last 24 years.

To be sure the court considered defendant's criminal history of 11 prior strike convictions and defendant's past poor performance on parole, including commission of the crimes leading to the current incarceration. The trial court noted the sentence complied with the CDCR's recommendation to reduce defendant's sentence and to strike two of the prior strike convictions, but explained the reason all of them would not be stricken was that the strikes were robberies with the use of a gun, and all three robberies were committed with personal use of a gun. The court concluded that defendant fell directly inside the spirit of the Three Strikes law.

Defendant does not argue that in refusing to strike prior convictions the court relied on factors that were not allowed under the law or that the factors the court relied on were unsupported by the record. Defendant's complaint, in essence, is the court should have given greater weight to other factors. Disagreement with the court's allocation of weight of the factors does not demonstrate an abuse of discretion. (Cf. *People v. Carmony* (2004) 33 Cal.4th 367, 379–380.) " '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. . . . '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance . . . .' " (*Id.* at

---

relied on were that defendant was a hard worker in prison and was older, which the court found not helpful.

p. 378, citations omitted.) "[T]he circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record . . .' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid*.)

The trial court stated it had considered all the evidence, and the reasons given for the modified sentences indicated the court considered the required factors of section 1172.1, subdivision (a)(5). Because the court focused its explanatory comments on defendant's crimes does not mean that was the only factor it considered. (See *People v. Myers, supra*, 69 Cal.App.4th at p. 310.) Though defendant argues the trial court "appears to have ignored" some factors, he has not pointed to any indication in the record that demonstrates this is so. We thus presume the court considered all relevant factors. (*Ibid*.)

Defendant has failed to meet his burden of showing the court's sentencing decisions were irrational or arbitrary. (See *Alvarez, supra*, 14 Cal.4th at pp. 977–978.)

## III.   The Eighth Amendment

Defendant argues his sentence of 39 years to life for second degree robberies during which no one was injured violates the prohibition against cruel and unusual punishments set forth in the Eighth Amendment to the United States Constitution because it is grossly disproportionate to his offense.

In its brief supporting recall and resentencing filed August 15, 2023, the prosecution recommended striking two of the three strike allegations and imposing one of the prior strike

14

convictions under the three strikes law.  Between the August 2023 filing and the trial court's decision in January 2024, defendant made no claim, orally or in writing, that a reduced sentence, which includes a life term under the three strikes law, would violate the Eighth Amendment, and he does not refute or even mention the People's claim the issue has been forfeited. While the issue has not be reserved for appeal (see *People v. Brewer* (2021) 65 Cal.App.5th 199, 212), we nevertheless review defendant's constitutional claim and find it to be meritless.[7] Defendant relies on *Solem v. Helm* (1983) 463 U.S. 277 (*Solem*) to assert his sentence violates "clearly established Eight[h] Amendment precedent."  He claims that *Solem* requires the court to determine proportionality by examining at least the following three factors: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  (*Id.* at pp. 290–292 (maj. opn. of Powell, J.).)  Defendant thus undertakes a comparison of his sentence with punishment for other crimes in the same and other jurisdictions.

　　*Solem* is not a "clearly" established precedent, as stare decisis is less rigid as applied to constitutional precedents. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 965; see *id.* at pp. 1008–1009 (conc. opn. of Kennedy, J.) (*Harmelin*).)  Writing the majority opinion in *Harmelin*, Justice Scalia characterized *Solem* as "scarcely the expression of clear and well accepted constitutional law," noting that since it was decided, two high

---

[7]　　Defendant makes no claim under the California Constitution.  (See Cal. Const., art. I, § 17.)

15

court cases have "explicitly rejected" *Solem*'s "three-factor" test. (*Harmelin*, at p. 965.) Concurring in the majority opinion, Justice Kennedy wrote, "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." (*Id.* at p. 1001.)

Subsequent to *Harmelin*, United States Supreme Court decisions have rejected proportionality review in noncapital cases, holding the Eighth Amendment requires, if at all, a narrow proportionality review in rare cases where the punishment gives rise to an inference that it is grossly disproportionate to the crime. (See, e.g., *Ewing v. California* (2003) 538 U.S. 11, 20 (plur. opn. of O'Conner, J.) (*Ewing*); accord, *Lockyer v. Andrade* (2003) 538 U.S. 63, 77 (*Lockyer*).)

In *Ewing*, another plurality opinion, the court approved statutory schemes such as California's three strikes law that resulted in life imprisonment upon a conviction for a serious felony with one or more prior qualifying convictions. (See *Ewing, supra*, 538 U.S. at pp. 19–20, 28–30 (plur. opn. of O'Conner, J.).) In that case, the defendant was convicted of grand theft after stealing three golf clubs with a value of nearly $1,200. (*Id.* at p. 28.) The defendant asked the trial court to dismiss the allegations of his prior strike convictions to avoid a sentence under California's three strikes law. (*Id.* at p. 19.) The trial court considered the defendant's entire criminal history, the fact that he was on parole when he committed his latest offense and heard arguments from counsel as well as a statement from the defendant himself. (*Id.* at pp. 19–20.) The court ruled the defendant's four prior strikes for three burglaries and a robbery

16

should stand and sentenced him under the three strikes law to 25 years to life. (*Ibid.*)

The Supreme Court found the "sentence [was] justified by [California's] public-safety interest in incapacitating and deterring recidivist felons, and amply supported by his own long, serious criminal record." (*Ewing, supra*, 538 U.S. at pp. 29–30 (plur. opn. of O'Connor).) The court held California "'was entitled to place upon [the defendant] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State'"; and his sentence was "not 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.'" (*Id.* at p. 30 (plur. opn. of O'Connor).) "'Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.'" (*Id.* at p. 21 (plur. opn. of O'Connor); see *Harmelin, supra*, 501 U.S. at pp. 995–996 (plur. opn. of Scalia, J.); *id.* at p. 1001 (conc. opn. of Kennedy, J.).)

Defendant's case is not exceedingly rare. Citing *Ewing, supra*, 538 U.S. at page 16 (plur. opn. of O'Connor, J.), the court came to a similar conclusion in *Lockyer, supra*, 538 U.S. at pages 66–68 (maj. opn. of O'Connor, J.), in which two separate thefts of videotapes each worth less than $100 resulted in two consecutive terms of 25 years to life. Prior to *Ewing*, Eighth Amendment claims were rejected in such cases as *Harmelin, supra*, 501 U.S. at pages 961, 995–996 (plur. opn. of Scalia, J.) (mandatory life sentence without the possibility of parole for possession of 672 grams of cocaine) and *Rummel v. Estelle* (1980) 445 U.S. 263, 266, 285 (life sentence for a nonviolent recidivist whose third conviction was for obtaining $120.75 by false pretenses).

Defendant suggests that robbery with a gun is a minor offense because no one was injured. Any robbery is both a serious and violent felony offense (§ 667.5, subd. (c)(9)), and any violation of section 12022.53 is both serious and violent (§ 667.5, subd. (c)(22)). With or without injury or a violation of section 12022.53, robbery is a serious and violent felony. (Cf. *People v. Montalvo* (2019) 36 Cal.App.5th 597, 624 [robbery by instilling fear].) Moreover, defendant's sentence was "amply supported by his own long, serious criminal record." (*Ewing, supra*, 538 U.S. at p. 30 (plur. opn. of O'Connor, J.).) As the People note, defendant was not being punished for a single offense, but for numerous offenses and recidivism; and "'the three strikes law punishes not only his current offenses, but also his recidivism.'" (*People v. Panighetti* (2023) 95 Cal.App.5th 978, 1003.) Furthermore, under the Eighth Amendment, even a cruel punishment may be constitutional as long as it is not unusual. (See *Harmelin, supra*, 501 U.S. at pp. 994–995 (plur. opn. of Scalia, J.).) Sentences like the sentence in *Ewing* and in defendant's case may be harsh and even cruel, but they are not unusual. (*Lockyer, supra*, 538 U.S. at pp. 66–68 (maj. opn. of O'Connor, J.); *Harmelin, supra*, at p. 961 (plur. opn. of Scalia, J.); *Rummel v. Estelle, supra*, 445 U.S. at pp. 266, 285 (maj. opn. of Rehnquist, J.).)

Defendant faults the People for citing such cases as *Ewing, supra*, 538 U.S. 11 and *Lockyer, supra*, 538 U.S. 63 because they are more than a decade old. Defendant argues that in doing so the People fail to recognize the "evolving state of California's criminal jurisprudence," which in some cases no longer permits

18

three strike sentences, even where previously legally imposed.[8] To illustrate this point defendant cites the more recent appellate court case of *People v. Avila* (2020) 57 Cal.App.5th 1134, 1145 (*Avila*), for its holding a three strikes sentence of 39 years to life for second degree robbery and attempted extortion violated the *California* constitution.  Defendant's illustration fails, as defendant has limited his constitutional claim to the *United States* Constitution, unlike the *Avila* court that expressly decided the "case only under the California Constitution." (*Avila*, at p. 1145, fn. 13.)  We find no citation to the California Constitution in defendant's briefs.  (See Cal. Const., art. I, § 17.)

Moreover, the circumstances in *Avila* were different from this case.  In *Avila*, the defendant's prior strikes were committed when he was under the age of 21, making him a youth offender, subject to expanded parole opportunities (*Avila, supra*, 57 Cal.App.5th at p. 1141); the most violent of his crimes occurred when he was 18 years old, almost 30 years prior to his current offense; and one of them would be a misdemeanor today (*id*. at p. 1148).  Furthermore, *Avila* not only fails to support defendant's contention under the Eighth Amendment, it would not support a claim under the California Constitution if one had been made.  In the course of comparing the defendant's sentence to sentences of

---

[8]     In approving the Three Strikes Reform Act of 2012, "the voters found and declared that its purpose was to prevent the early release of dangerous criminals and relieve prison overcrowding by allowing low-risk, nonviolent inmates serving life sentences for petty crimes, such as shoplifting and simple drug possession, to receive twice the normal sentence instead of a life sentence." (*People v. Brimmer* (2014) 230 Cal.App.4th 782, 793.)

*adults*, the *Avila* court stated the defendant could not be placed "alongside [adult] recidivists for whom a three strikes sentence is *constitutional*." (*Avila*, at p. 1148, italics added.) Here, defendant was at least 21 years old when he committed his prior robberies, and he was 32 years old when he committed the last three robberies, for which he is currently in prison. Thus, defendant's comparison to *Avila* fails.

As discussed, any robbery is a serious and violent felony. (§ 667.5, subd. (c)(9).) The personal use of a firearm during its commission is serious and violent and calls for greater punishment. (§§ 667.5, subd. (c)(22), 12022.53, subd. (b).) We conclude defendant's sentence of 39 years to life, imposed under the three strikes law does not violate the Eighth Amendment, as defendant is a recidivist adult offender who was convicted of three robberies while armed with a firearm and who admitted 11 prior robbery convictions.

## DISPOSITION

The January 8, 2024 judgment of resentencing is affirmed.


CHAVEZ, J.


We concur:


LUI, P. J.


RICHARDSON, J.

20